## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

BRAD WARRINGTON,

     *Plaintiff*

v.

ROCKY PATEL PREMIUM CIGARS, INC.;

and

RAKESH PATEL,

     *Defendants*

Case No. _____

_____

## <u>VERIFIED COMPLAINT, DERIVATIVE ACTION, AND DEMAND FOR JURY TRIAL</u>

Plaintiff Brad Warrington, by and through his undersigned attorneys, submits this Verified Complaint and Demand for Jury Trial and alleges as follows:

### <u>INTRODUCTION</u>

1. Plaintiff Brad Warrington ("**Warrington**") brings this action against Defendants Rocky Patel Premium Cigars, Inc. ("**Patel Cigars**") and Rakesh Patel ("**Rocky**") for wrongful conduct associated with the corporation. The causes of action in this complaint arise under Florida, California, and Delaware common law.

1

2. Defendant Rocky Patel has regularly and repeatedly engaged in conduct designed to oppress Warrington as a minority shareholder of Patel Cigars, including withholding corporate information and distributing preferential dividends. He has intentionally and repeatedly withheld key financial information from Warrington, interfering with his ability to value and sell his shares as well as obscuring or misrepresenting the true value of the corporation.

3. Defendants Patel Cigars and Rocky Patel refused to accept Warrington's written notice for the sale of his shares and refused to facilitate the sale in breach of the 1998 Buy-Sell Agreement. Rocky Patel made untrue statements of material fact regarding the value of the company in order to induce Warrington to sell his shares at a loss.

4. As president and controlling shareholder, Defendant Rocky Patel has repeatedly engaged in conduct that prioritized his personal wealth over the interests of the corporation, including self-dealing and misuse of company assets. He has failed to uphold his fiduciary duties to the corporation resulting in mismanagement, waste, and damage to Patel Cigars.

## JURISDICTION AND VENUE

5. This court has original jurisdiction over this proceeding because there is complete diversity between each plaintiff and each defendant and the matter in controversy exceeds $75,000. 28 U.S.C. § 1332.

6. Defendant Patel Cigars is a Delaware incorporated corporation with its principal place of business located in Collier County, Florida. Corporations are deemed to be citizens of every state incorporated, as well as the state where its principal place of business resides. 28 U.S.C. § 1332(c).

7. Defendant Rocky Patel is the president and majority shareholder of Patel Cigars and is a citizen of Florida.

8. Plaintiff Brad Warrington is a citizen of Montana.

9. Venue is proper in the Middle District of Florida because venue is proper in any district where any Defendant resides. 28 U.S.C. § 1391(b).

## PARTIES

10. Plaintiff Brad Warrington is a minority shareholder in Patel Cigars.

11. Defendant Rocky Patel is the president and majority shareholder of Patel Cigars.

12. Defendant Patel Cigars is a Delaware incorporated corporation with its principal place of business in Florida.

## FACTUAL BACKGROUND

13. In 1996 Brad Warrington partnered with his neighbor and close friend Rocky Patel in support of Patel's vision to start a cigar company. The corporation was originally formed in North Carolina as Indian Tabac-Company, Inc. Warrington invested startup capital, assisted in drafting a business plan to

acquire more investment, and participated in company startup activities. He was appointed secretary of Indian Tabac-Company, Inc.

14. In 1998 Warrington entered into a Buy-Sell Agreement (the "**Agreement**") with seven other individuals and Indian Tabac-Company, Inc. The Agreement requires written notice before a shareholder can sell their shares and mandates regular valuations of the company every two years. (See Exhibit 1).

15. In 2004 Indian Tabac-Company, Inc. received authorization to do business in Florida and a few years later changed its name to Rocky Patel Premium Cigars, Inc.

16. Warrington currently owns the most shares in Patel Cigars besides Rocky Patel. He is a minority shareholder and owns 6.05% of shares (7,010 total shares).

17. Rocky owns approximately 93% of shares and is the controlling shareholder and president of Patel Cigars. In 2008 Rocky gifted 500 shares each to his brother and cousin, Nishit Patel and Nimish Desai, who are both employees of Patel Cigars.

18. Since he became involved with the company, Warrington has not received any audited financial statements. He received a single dividend in 2010. Rocky told Warrington that dividends were not being paid because all retained earnings were being used to grow the business, including the acquisition of tobacco inventory, tobacco farms, and cigar production companies in Central

America. It was Warrington's understanding that these assets were owned by Patel Cigars itself.

19. Patel Cigars has grown to become one of the world's leading premium cigar brands and Rocky is one of the most prominent figures in the global cigar industry.

### Warrington's Proposed Sale

20. In 2015 Warrington began verbal discussions with Patel Cigars about selling or transferring his shares. Rocky made a verbal offer for Warrington's shares which was significantly lower than the valuations Rocky gave during discussions with potential investors.

21. Around this time Warrington and Rocky were making arrangements to develop the Patel Cigars brand in mainland China and bring in new investors. Warrington independently financed costs to acquire import licenses, hire employees, and purchase inventory from Patel Cigars to build the brand in Asia. Rocky expressed a valuation of the company at $150 million.

22. Despite Warrington's extensive and loyal history with the company and its continued growth, Rocky refused to make a good faith offer for the purchase of Warrington's shares. He verbally offered Warrington less than $1 million for the sale of his shares. Warrington later obtained an independent valuation of his accrued shareholder interest at $13 million.

23. In June 2021, Warrington sent a letter to Patel Cigars indicating his desire to sell his shares in accordance with the Buy-Sell Agreement. (See Exhibit

2). The purchase price was to be $7.5 million for 7,010 shares. The letter advised that Patel Cigars had 30 days from receipt to exercise its purchase option. Patel Cigars' attorney responded on June 21 that the letter had been received.

24. After sending the June letter, Warrington did not receive any response from Patel Cigars indicating an interest in purchasing his shares. He sent several more letters in August, September, October, and November requesting shares, a share certificate, and a virtual data room so that the proposed buyer could conduct due diligence. (See Exhibits 3-5). These letters went unanswered.

25. As a result of Patel Cigars' failure to provide the necessary information for due diligence, Warrington was forced to enter into an agreement to sell only a portion of his shares at a discounted price. Warrington noted this sale modification in his September letter to Patel Cigars when he again requested a virtual data room for due diligence. (See Exhibit 4).

26. Patel Cigars and Rocky refused to provide the requested information, shares, or a share certificate, unfairly interfering with the sale of Warrington's shares.

### Warrington's Demand for Documents

27. In 2019 Warrington provided a written demand for Patel Cigars' financial documents pursuant to his rights as a shareholder. This demand was reaffirmed in 2020 and again in 2021. (See Exhibits 6-8).

28. Patel Cigars and Rocky refused to provide Warrington with information about the company, including audited financial records and the required bi-

annual third party company valuations. This rendered Warrington uncertain about the financial security and management of the company as well as the value of his shares.

29. Patel Cigars and Rocky intentionally obscured or misrepresented the value of the company and Warrington's shares. Their refusal to provide all of the requested corporate documents has prevented shareholders from investigating any potential wrongdoing or mismanagement within the company.

**Wrongdoing, Mismanagement, and Minority Shareholder Oppression**

30. Rocky receives exorbitant compensation and distributions from Patel Cigars, using his position as president and holder of more than 90% of its shares to negotiate preferential payments and dividends.

31. Rocky has repeatedly received interest-free loans from the company which he has used to further personal interests and fund numerous business ventures. In 2005 Patel Cigars secured a $1.95 million loan which was then loaned to Rocky so that he could purchase additional shares in the company. In 2010 Patel Cigars declared a dividend of $2.9 million. Warrington received $40,000 and the remaining balance was retained by Patel Cigars to pay off the 2006 loan.

32. Patel Cigars pays Rocky an excessive salary in addition to bonuses and royalties relating to the trademark of his name. Rocky is paid a regular salary of $1.8 million plus yearly bonuses of $2 million. In 2019 Patel Cigars paid Rocky Patel over $2 million in royalty payments for the trademark usage of his name.

33. Rocky has purchased several companies using interest-free loans from Patel Cigars. These companies produce tobacco products which Patel Cigars then purchases. In 2019 Patel Cigars purchased over $3.5 million worth of tobacco products from Rocky Patel-owned businesses.

34. As the controlling shareholder and President of the company, Rocky has engaged in a pattern of wrongdoing and minority shareholder oppression. He has prevented Warrington from obtaining financial information about the company and its management and has secured preferential payments for himself at the expense of other shareholders.

35. Rocky has used his position and power within the company to enrich his personal wealth at the detriment of Patel Cigars, engaging in self-dealing, misuse of company funds, and usurpation of corporate opportunities in breach of his fiduciary duties. Rocky can be held liable in an individual capacity for his tortious actions, wrongdoings, and depletion of corporate property for personal benefit.

## CLAIMS FOR RELIEF

## Count I - Breach of Contract

36. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 35 of the Complaint as if fully set forth herein.

37. Warrington, Rocky, and Patel Cigars are parties to the 1998 Buy-Sell Agreement requiring written notice for a transfer or sale of shares, and a valuation of the company every two years. Written notice is required so that the

corporation can exercise its option to purchase within 30 days of receipt. Pursuant to Section 6.07 of the Agreement, it must be governed by and construed in accordance with California law. (See Exhibit 1).

### A. Sections 2.01 and 2.02 - Sale or Transfer of Common Stock

38. Section 2.01 requires a stockholder who desires to sell all or part of their shares to first provide written notice to the corporation. The written notice must specify the number of shares to be sold, the name of the proposed transferee, and the amount and terms of the consideration to be received. Section 2.02 provides that the corporation has 30 days after receipt of the 2.01 notice to exercise its option to purchase the shares itself.

39. Section 2.04 provides that if the corporation does not exercise its option to purchase, the selling stockholder shall be entitled to sell or transfer to the proposed transferee specified in Section 2.01.

40. Warrington provided written notice to Patel Cigars of his desire to sell his shares in accordance with Section 2.01. Patel Cigars indicated receipt of the written notice two days later, but did not express a desire to purchase the shares within the 30 day period. After Warrington began to move forward with the sale, Patel Cigars ignored requests to provide a virtual data room for due diligence and refused to provide the shares or share certificate to the proposed buyer.

41. Despite Warrington's adherence to the Agreement's requirements, Patel Cigars refused to acknowledge and provide support for the sale. Patel Cigars

unnecessarily and intentionally delayed the sale of Warrington's shares in the already uncertain financial sphere that has resulted from the global pandemic.

42. Patel Cigars and Rocky unfairly prevented Warrington from transferring his shares as provided in the Agreement, and therefore are in breach of the Agreement.

### B. Section 4.02 - Value of the Corporation

43. Section 4.02 states that the value of the corporation shall be determined every two years pursuant to independent appraisals conducted by the seller and buyer of shares.

44. During the period of time from 1996 to the present, no regular valuations or appraisals of the company were provided to Warrington. During this time Rocky engaged in multiple transfers of his shares.

45. Patel Cigars and Rocky failed to provide regular valuations of the corporation in accordance with Section 4.02 and therefore are in breach of the Agreement. This failure to provide regular valuations of the corporation rendered Warrington uncertain about both the financial prospects of the corporation and the true value of his shares.

### C. Additional Breaches of the Agreement

46. Rocky has continually breached the Agreement while demanding complete performance from Warrington. He has gifted shares to his family and to his trust without undergoing the valuation or appraisal process required by

Section 4.02. He provided written notice for these share transfers but failed to include the terms and consideration as required by Section 2.01.

47. The multiple breaches described above have damaged Warrington.


## **Count II - Breach of the Covenant of Good Faith and Fair Dealing**

48. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 35 of the Complaint as if fully set forth herein.

49. Patel Cigars and Rocky are both parties to the 1998 Agreement and as such, have a duty to exercise subjective good faith and an objective level of reasonableness in their contractual dealings.

50. Warrington performed his obligations under the Agreement by providing written notice for the sale of his shares and 30 days for Patel Cigars to exercise its option to purchase said shares. Under the terms of the Agreement, Warrington was free to sell or transfer his shares after providing the requisite notice and 30-day waiting period.

51. Patel Cigars and Rocky unfairly frustrated Warrington's ability to freely sell his shares after he properly performed his duties under the Agreement. Their conduct was objectively unreasonable in refusing to provide Warrington with the necessary information and shares to complete his sale.

52. These actions delayed and prevented the sale of Warrington's shares in violation of the covenant of good faith and fair dealing. As a result of this breach, Warrington was damaged.

## **Count III - Tortious Interference with Contract or Business Relationship**

53. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 35 of the Complaint as if fully set forth herein.

54. In June, August, and September of 2021, Warrington wrote to Patel Cigars regarding the proposed sale of his shares. The June letter noted that the proposed purchase price of Warrington's 7,010 shares was $7.5 million. (See Exhibit 2).

55. Patel Cigars failed to establish a virtual data room for due diligence despite multiple requests, forcing Warrington to alter the sale agreement, discounting the price and the amount of shares to be sold. (See Exhibit 4).

56. On October 15, 2021, Warrington entered into a contract with Whitefish Bay SPV for the sale of 500 shares of his stock.

57. On October 15, Warrington provided Patel Cigars with the executed Stock Purchase Agreement. (See Exhibit 5). On November 1, Warrington wrote to Patel Cigars and requested shares and a share certificate on behalf of the purchaser.

58. Patel Cigars had written notice of an existing business relationship both before and after Warrington entered into the contract for the sale of his shares.

59. Patel Cigars and Rocky intentionally acted to delay or prevent the sale of Warrington's shares without justification. Patel Cigars failed to respond to Warrington's requests for a virtual data room so that the purchaser could conduct

due diligence, forcing the alteration of the sale agreement, and refused to provide Warrington with the shares or share certificate, preventing Warrington from performing his portion of the sale contract.

60. The contract between Warrington and Whitefish Bay SPV was disrupted by the defendant's intentional conduct and would have been completed if not for the defendant's interference. Their intentional and unjustified evasiveness and refusal to provide Warrington with necessary information and share certificates rendered him incapable of carrying on his business relationship. This interference damaged Warrington, forcing him to discount the sale price, and later rendering him unable to fulfill his existing contractual obligations.

## **Count IV - Breach of Fiduciary Duty - Direct Action**

61. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 35 of the Complaint as if fully set forth herein.

62. As president and the majority shareholder, Rocky Patel has a duty to Patel Cigars and its shareholders to act in good faith and in the corporation's best interests.

63. Rocky breached his duties of loyalty and care by engaging in numerous actions equating to minority shareholder oppression.

64. As a result of Rocky's actions, Warrington was directly and individually damaged. He was uniquely injured due to his position as minority shareholder and holder of the most shares besides Rocky.

65. As a result of Rocky's actions, Warrington was unable to obtain accurate financial records of the company, was unable to investigate the value of his shares, and was subject to dividend starvation and preferential distributions which went to the majority shareholder alone.

*A. Dividend Starvation and Preferential Distribution*

66. Warrington did not receive any dividends from Patel Cigars from the time of his initial investment in 1996 until 2010.

67. Patel Cigars pays Rocky an excessive salary, including bonuses and royalties relating to the trademark of his name, and provides interest-free loans for his personal business ventures.

68. Rocky has utilized his controlling position in Patel Cigars to gain a significant personal pecuniary advantage. The payment of excessive salaries, bonuses, and royalties, along with the provision of personal loans, constitutes an unequal and preferential distribution of the company's funds in breach of his fiduciary duties.

69. The preferential distribution of corporate assets to the majority shareholder alone caused damage to Warrington as the minority shareholder.

## *B. Withholding Corporate Information*

70. Warrington made several demands in 2019, 2020, and 2021 to inspect Patel Cigars' records. As a minority shareholder, Warrington has a significant interest in ensuring the financial stability and proper management of the corporation. Warrington's demands were made for the purpose of investigating wrongdoing, mismanagement, corporate waste, and financial discrepancies. He was not provided with the requested documents despite three written demands.

71. Rocky has a statutory and common law duty to disclose certain information about the company. He breached this duty to disclose by refusing to provide Warrington with certain corporate records, including audited financials, despite multiple written demands.

72. When Warrington requested valuation information to inform a future sale of his shares, Rocky claimed the company's future and finances were uncertain. However, Patel Cigars' reported profits, plus remuneration, royalties, and loans to Rocky have exceeded $130 million since 2007.

73. Rocky knowingly concealed the true value and finances of the corporation. His actions were calculated to oppress Warrington as a minority shareholder, to hide evidence of wrongdoing or mismanagement, to obscure the true value of the company, and to prevent the sale of his shares. As a result, Warrington was damaged.

## **Count V - Breach of Fiduciary Duty - Shareholder Derivative Action**

74. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 35 of the Complaint as if fully set forth herein.

75. Rocky Patel engaged in a pattern of conduct which prioritized his personal interests over those Patel Cigars and its shareholders, violating his fiduciary duties of care and loyalty.

76. Warrington has been a contemporaneous holder of Patel Cigars' stock since 1996 and this derivative action is not a collusive one to confer jurisdiction this court would otherwise lack.

77. Warrington did not make a demand to corporate authority prior to filing suit. He made several inquiries with Patel Cigars in order to investigate potential wrongdoing and mismanagement. These inquiries were ignored, and Warrington believed in good faith that any demand to corporate authority would be ignored as well. Because Rocky is the president and controlling shareholder, Warrington believed a demand to the corporation to rectify his wrongdoing would be futile.

78. As president and majority shareholder, Rocky Patel engaged in a pattern of tortious conduct and wrongdoing including self-dealing and subterfuge. As a result, the corporate veil can be pierced and Rocky can be held personally liable for his wrongdoing.

79. Rocky Patel breached his fiduciary duties to Patel Cigars, damaging the corporation as a result.

### A. Misuse of Company Funds and Assets

80. Rocky has secured excessive compensation and preferential distributions from Patel Cigars in breach of his fiduciary duties of care and good faith.

81. Patel Cigars pays Rocky an exorbitant amount, including salary, bonuses, and royalties exceeding $5 million per year. Rocky has received multiple interest-free loans from the company which he has used to further personal interests and fund numerous business ventures.

### B. Self-Dealing

82. Rocky has entered into several business transactions with Patel Cigars where he derived personal benefits at the expense of the corporation. He has purchased several companies using interest-free loans from Patel Cigars. These companies produce tobacco products which Patel Cigars then purchases.

83. In 2019 Patel Cigars purchased over $3.5 million worth of tobacco products from Rocky Patel-owned businesses. The same year Rocky Patel-owned businesses purchased more than $300,000 worth of tobacco products from Patel Cigars.

84. Rocky breached his duties of care and loyalty to Patel Cigars by misusing company funds and assets and engaging in self-dealing.

*C. Usurpation of Corporate Opportunities*

85. Rocky has continually exploited opportunities that rightly belong to the corporation. By utilizing loans from Patel Cigars, Rocky purchased various tobacco companies which then provided products to Patel Cigars. Rocky purchased these companies for personal benefit, despite using corporate funds.

86. Patel Cigars was financially capable of purchasing tobacco companies itself, which would fit into the corporation's present activities and established policies.

87. Rocky breached his fiduciary duty of loyalty by usurping corporate opportunities that rightly belonged to Patel Cigars. As a result, Patel Cigars lost out on valuable opportunities for growth and expansion.

*D. Failure to Act in Good Faith and in Best Interests of the Corporation*

88. Rocky has repeatedly engaged in bad faith conduct designed to benefit him personally, instead of Patel Cigars. He has continually breached his fiduciary duties to act in good faith and in the corporation's best interests by engaging in self-dealing and other actions which prioritized his personal wealth over that of the corporation. His actions have resulted in damage to the corporation in the form of lost opportunities, misused funds, and bad faith mismanagement.

**Count VI - Securities Fraud**

89. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 35 of the Complaint as if fully set forth herein.

90. Warrington's shares in Patel Cigars are securities as defined by Florida Statutes § 517.021(22).

91. Patel Cigars and Rocky engaged in a course of conduct intended to defraud or mislead Warrington as to the true value of his shares. They failed to provide audited corporate financial records and accurate share valuations in connection with their offers to purchase Warrington's shares. Rocky intentionally made untrue statements of material fact regarding the value of the company and Warrington's shares in order to induce him to sell his shares at a much lower price than they are worth. These actions violated Florida securities law and damaged Warrington.

## Count VII - Punitive Damages

92. Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 35 of the Complaint as if fully set forth herein.

93. Rocky's actions amounted to the malicious and deliberate oppression of a minority shareholder. He engaged in a pattern of conduct designed to prevent Warrington from freely selling his shares, to obscure or misrepresent the true financial condition of the corporation, and to deliver disguised dividends to himself as the controlling shareholder. Punitive damages are appropriate to deter further wrongdoing and shareholder oppression.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiff requests the following relief:

1. Awarding damages to compensate Warrington for the violations of his rights and privileges as a shareholder.

2. Awarding punitive damages for the Defendant's deliberate and malicious conduct relating to minority shareholder oppression.

3. Costs and attorney's fees incurred in bringing this action.

4. Any other relief that the court deems just and proper.


## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby requests a trial by jury of all issues properly triable by jury in this action.


Dated: February 4, 2022                    Respectfully Submitted,

*/s/ Francis Caruso*
Francis Caruso
Lead Counsel
C&A Advisory, LLC
MD Bar No. 9506210062
100 Congress Avenue
Suite 2000
Austin, TX 78701
512-566-2637
frank@ca-advisory.com

*/s/ Taylor Allyn*
Taylor Allyn

C&A Advisory, LLC
FL Bar No. 1032826
taylor@ca-advisory.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

Plaintiff certifies that on February 4, 2022, the foregoing was filed electronically

with the Clerk using the CM/ECF system and served on the Defendants through

their counsel Alex R. Figares, 4001 Tamiami Trail North, Suite 300, Naples FL

34103 (afigares@cyklawfirm.com).

*/s/ Taylor Allyn*

Taylor Allyn
C&A Advisory, LLC
FL Bar No. 1032826
100 Congress Avenue
Suite 2000
Austin, TX 78701

## **VERIFICATION**

I, Brad Warrington, declare as follows:

1. I am the Plaintiff in the present case, a citizen of the United States of America, and a resident of Montana.

2. I have personal knowledge of the facts set forth in the *Verified Complaint, Derivative Action, and Demand for Jury Trial*, and if called on to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct, as are the factual statements concerning Rocky Patel Premium Cigars, Inc. and Rakesh Patel, their activities, and their intentions.

Executed on February 5 , 2022.


Brad Warrington

# Exhibit

# 1

## BUY-SELL AGREEMENT

THIS AGREEMENT is executed this _____ day of September 1998, between K. C. Stock, Rakesh Patel, Philip S. Zanghi, III, Diruna Patel, Bernard Endres, Brad Warrington, Jay Singletary, Pravine Patel (collectively referred to as the "Original Stockholders"), Indian Tabac Company, Inc., a Delaware corporation (hereinafter referred to as the "Corporation"), and the undersigned spouses of the above-mentioned Stockholders (hereinafter referred to as "Spouses of Stockholders" or "Spouses") (collectively referred to as "Stockholders").

## R E C I T A L S

A.     Original Stockholders and the Corporation are or will be the record owners of all the issued and outstanding shares of common stock in Corporation, and their holdings at the date of the execution of this Agreement are or are to be as follows:

|  | Common Shares | Percentage |
|---|---|---|
| K. C. Stock | 63,341 | 50% |
| Rakesh Patel | 37,256 | 29.4% |
| Diruna Patel | 4,489 | 3.54% |
| Bernard Endres | 4,489 | 3.54% |
| Jay Singletary | 4,489 | 3.54% |
| Brad Warrington | 4,489 | 3.54% |
| Philip S. Zanghi, III | 6,334 | 5.0% |
| Pravine Patel | 1,795 | 1.4% |

B.     Although none of the Spouses of Stockholders is a record owner of any of the outstanding shares of Corporation, each may have an interest in the common stock standing in the name of one of the Original Stockholders by reason of community property laws, or otherwise. The parties intend that this Agreement shall apply to any such interest which may exist without determining either the existence or the extent of any such interest.

C.     The parties desire to assure the continuity of the management and control of the Corporation upon the withdrawal, disability or death of any of the Original Stockholders who are also the active managers of the Corporation, or upon the sale of common stock by any Stockholder.

NOW, THEREFORE, on the basis of the foregoing facts and in consideration of the mutual covenants and agreements contained herein, the parties hereto agree as follows:

1.    Restrictions on Transfer of Common Stock

1.01    Restriction.  No transfer of any common stock in the Corporation may be made by any Stockholder, his Spouse, his estate, his heirs, his devisees, or his or its successors in interest unless the provisions of this Agreement are first complied with.

1.02    Endorsement of Certificates.  The Stockholders agree to turn in all Certificates to the Corporation for endorsement pursuant to this Section.  The Corporation shall endorse upon each Certificate of common stock of the Corporation now owned or hereinafter acquired by any Stockholder, including the successors or assigns of such Stockholder, the following legend:

> "This Certificate is transferable only after compliance with the provisions of that certain Buy-Sell Agreement entered into in September, 1998 and affecting the shares represented hereby, a copy of which is on file in the office of the Secretary of the Corporation.  That Agreement provides generally that:  (a) before a Stockholder can sell or transfer his common stock or if his employment is terminated or if he becomes disabled, the Corporation has an option to purchase the common stock; (b) if a Stockholder sells all or a portion of his common stock to a person not a Stockholder at the time of the sale, such purchaser must agree to become a party to the Agreement; and (c) upon the death of a Stockholder, the Corporation must buy, and the estate of the deceased Stockholder must sell, all of the common stock of the deceased Stockholder."

2.    Sale or Transfer of Common Stock

2.01    Notice of Proposed Transfer.  Any Stockholder who desires to sell or transfer all or any part of the shares of common stock of the Corporation standing in his or its name shall notify the proposed transferee of the terms of Section 1.01 of this Agreement and shall give written notice ("Section 2.01 Notice") thereof to the Corporation.  The Section 2.01 Notice shall specify the number of shares to be disposed of, the name of the proposed transferee, and the amount and terms of the consideration to be received for the shares.  Upon receipt of the Section 2.01 Notice, the Corporation shall immediately forward such notice to the other Stockholders, and specify the date on which it received such notice.

2.02    Corporation's Option to Purchase.  The Corporation shall have an option to purchase all or any part of the common stock of a Stockholder desiring to sell at the lesser of the price (including the terms) specified in the Section 2.01 Notice, or the price specified in Article 4 and upon the terms provided in Article 5. The Corporation shall have 30 days after the receipt of such written notice to exercise its option.  It shall exercise the option by giving written notice of such exercise to the selling Stockholder and to all of the other Stockholders.  It shall deliver to the selling Stockholder either the full payment or the down payment and evidence of the balance of the purchase price provided for in the Section 2.01 Notice or Article 5, as appropriate, against delivery of the shares by the selling Stockholder pursuant to Section 6.01 hereof.

2.03   Stockholder's Option to Purchase Common Stock.   If the Corporation fails to purchase any of the common stock subject to its first option as set forth in Section 2.02 hereof, the other Stockholders shall have an option to purchase their proportionate shares of the common stock not purchased by the Corporation at the price the Corporation would have been required to pay pursuant to Section 2.02 hereof.  (The term "proportionate share" shall mean the proportion of the common stock offered for sale which the common stock of each Stockholder, other than the offering Stockholder, bears to the total common stock owned by all Stockholders other than the offering Stockholder.)

The other Stockholders shall have 60 days after the receipt of the written Section 2.01 Notice by the Corporation to exercise all or part of their options.  They shall exercise the options by giving written notice of such exercise to the selling Stockholder and to all of the other Stockholders.  They shall deliver to the selling Stockholder the down payment and evidence of the balance of the purchase price provided for in the Section 2.01 Notice or Article 5, as the case may be, against delivery of the shares by the selling Stockholder pursuant to Section 6.01 hereof.

2.04   Offered Common Stock as to Which Options Are Not Exercised.   If neither the Corporation nor the Stockholders exercise the options provided for in Section 2.02 and 2.03 hereof as to any common stock offered for sale by a Stockholder, the selling Stockholder shall be entitled to sell or transfer to the proposed transferee specified in the Section 2.01 Notice the unpurchased common stock at the price and terms specified in the Section 2.01 Notice, provided however, that prior to the Corporation having any obligation to register the transfer on the stock register of the Corporation, the proposed transferee (and his or her Spouse if such proposed transferee is married) shall be required to become a signatory to this Buy-Sell Agreement and shall become subject to the terms herein.  Any such failure to become a signatory shall void a transfer.  Upon the sale of all of the shares of the common stock of the Corporation standing in the name of the Stockholder, the Stockholder shall cease to be a party to this Agreement.

2.05   Exit By K. C. Stock.   The parties hereto acknowledge Section 6 of the Stock Purchase Agreement between K. C. Stock and Indian Tabac Company, Inc. and agree to the sale of the assets of the Corporation in the event the conditions described in Section 6 are met.

3.   Transfer of Common Stock Upon Death of a Stockholder

3.01   Corporation's Obligation to Purchase Common Stock of a Deceased Stockholder.   Upon the death of any Stockholder, the Corporation shall be obliged to purchase and the estate of the deceased Stockholder or a revocable trust established by the deceased Stockholder shall be obligated to sell all of the common stock held of record in the name of the deceased Stockholder or such a revocable trust (including any common stock in which his Spouse may have an interest) at the price specified in Article 4 and upon the terms provided in Article 5.

If a deceased Spouse of a Stockholder has an interest in the common stock standing in the name of the Stockholder or a revocable trust established by such deceased spouse and this interest is transferable by such deceased Spouse's revocable trust, will or under the laws of intestacy and:

(a)     The Stockholder acquires the interest of his deceased Spouse either as trustee or as the beneficial owner thereof, then the interest of his deceased Spouse may be transferred to the Stockholder notwithstanding the other terms of this Agreement. Any such interest acquired by the Stockholder shall be subject to the restrictions upon sale during his lifetime or at his death otherwise contained herein; or

(b)     The Stockholder does not acquire that interest, then the estate of such deceased Spouse or such deceased spouse's revocable trust shall be obligated to sell and the Corporation shall be obligated to purchase all of such interest at the price specified in Article 4 and upon the terms provided in Article 5.

The obligation of the Corporation to make any of the purchases provided herein shall be conditioned upon such purchase being legally permissible under the laws of the State of California. The parties shall cause the Corporation to take any such action as may be necessary to permit the Corporation to make its purchase. Such action may include, but is not limited to, causing the Corporation to purchase and maintain life insurance on the lives of the Stockholders in amounts which approximate the estimated purchase price of the common stock held by such Stockholders. The representatives of the estate of the deceased and the Corporation shall complete such sale as soon after the date of death as is practicable.

3.02    Stockholders' Option to Purchase. If the Corporation is unable to legally purchase any shares of the common stock that it is obligated to purchase under the provisions of Section 3.01 herein, then each of the other Stockholders shall have the option to purchase such Stockholder's proportionate share (as defined in Section 2.03) of common stock not purchased by the Corporation at the price specified in Article 4 and upon the terms provided in Article 5.

4.    Purchase Price of Common Stock

4.01    If the Corporation or any Stockholder purchases Common stock pursuant to the terms of this Agreement, the purchase price of the common stock shall be an amount obtained by multiplying the Value Per Share of common stock by the number of shares of common stock being purchased.

4.02    For purposes of this Article 4, the following terms shall have the following meanings:

"Value Of The Corporation" shall be determined every two years pursuant to the following:

The Stockholder selling the shares and the Stockholder or Corporation purchasing the shares shall each choose an appraiser having the qualifications set forth below, and shall provide notice to the other party of the identity of such appraiser. Such appraisers shall each separately determine the value of the shares. All appraisers shall be accounting or investment banking or business valuation firms having at least five years experience appraising corporations and such appraisers shall act in good faith and independently of each other and of the parties hereto. If the valuation stated in the higher appraisal is no more than 110% of the valuation in the lower appraisal then the price shall be the average of the two appraisals. If the valuation stated in the higher appraisal is more than 110% of the valuation stated in the lower appraisal, the

two appraisers shall select a third appraiser to determine the value of the shares. The price of the shares shall be the arithmetic average of those two of the three appraised values which are the closest in the amount and the remaining appraisal shall be disregarded. If either party fails to appoint an appraiser within ten days, the appraiser timely appointed by the other party shall determine the value of the shares. Each party shall pay all of the costs of its own appraiser and one-half of the cost of the third appraiser, if any. The appraisers shall each have no more than thirty days to complete the appraisal process.

"Value Per Share" shall be determined by dividing the Value Of The Corporation by the number of outstanding shares of the Corporation.

5.    <u>Payment of Purchase Price</u>

     5.01   <u>Payment</u>. Any party purchasing common stock in accordance with the terms of this Agreement shall, at purchasing party's option, deliver to the selling Stockholder in cash or cash equivalent either (i) full payment, or (ii) a down payment of 20%.

     5.02   <u>Balance</u>. Any person purchasing common stock under this Agreement by making a down payment provided in Section 5.01 hereof shall deliver to the selling Stockholder a negotiable promissory note representing the balance of the purchase price. The note shall be signed by the purchaser, guaranteed by the purchaser and the purchaser's spouse, and shall be payable in twelve equal quarterly installments, the first of which shall be due one month after the date of the payment of the down payment. The unpaid balance of the purchase price shall bear interest at the rate of ten percent per annum, payable with each installment of principal. The purchaser shall have the right to pay any or all installments in full or in part at any time prior to maturity without penalty.

6.    <u>Miscellaneous</u>

     6.01   <u>Delivery of Common Stock; Transfer of Title and Warranty</u>. The instruments representing the common stock, together with proper instruments of assignment and transfer, shall be delivered to the purchaser within 10 business days of (i) the exercise of the option to purchase or (ii) the triggering of the Corporation's or Stockholder's option to purchase pursuant to Article 3 hereof. Upon the sale of common stock pursuant to the terms of this Agreement, the selling Stockholder, or the estate or trust of the deceased Stockholder, shall transfer and warrant encumbrance free title to the purchaser.

     6.02   <u>Transfer Tax</u>. All transfer taxes and all other charges and costs payable or incurred in connection with the transfer of common stock herein or the registration of such common stock in the name of the purchaser shall be paid in full by the selling Stockholder.

     6.03   <u>Violation of Agreement</u>. Any sale or transfer or purported sale or transfer of common stock of Corporation shall be null and void unless the terms, conditions, and provisions of this Agreement are strictly observed and followed.

     6.04   <u>Successors</u>. This Agreement shall bind the respective parties, jointly and severally, their successors, assigns, administrators and executors.

6.04    Successors.  This Agreement shall bind the respective parties, jointly and severally, their successors, assigns, administrators and executors.

6.05    Arbitration.  In the event that any controversy or claim arising out of this Agreement cannot be settled by the parties, such controversy or claim shall be settled by arbitration in accordance with the then current rules of the American Arbitration Association, and judgment upon the award may be entered in any court having jurisdiction thereof.

6.06    Option Periods.  If the Corporation or all of the Stockholders expressly decline in writing to exercise an option granted to it or them pursuant to this Agreement, it shall be unnecessary for the remainder of that option period to expire before another option period or other rights pursuant to this Agreement accrue.

6.07    Governing Law.  This Agreement shall be construed in accordance with, and governed by, the laws of the State of California.

6.08    Counterpart Execution.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, and all of which when taken together shall be deemed to be on Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

INDIAN TABAC COMPANY, INC.

By _____
Philip S. Zanghi, III, President

By _____
Rakesh Patel, Executive Vice President


ORIGINAL STOCKHOLDERS

_____
K. C. Stock

_____
Rakesh Patel


_____
Philip S. Zanghi, III

6.04   Successors.  This Agreement shall bind the respective parties, jointly and severally, their successors, assigns, administrators and executors.

6.05   Arbitration.  In the event that any controversy or claim arising out of this Agreement cannot be settled by the parties, such controversy or claim shall be settled by arbitration in accordance with the then current rules of the American Arbitration Association, and judgment upon the award may be entered in any court having jurisdiction thereof.

6.06   Option Periods.  If the Corporation or all of the Stockholders expressly decline in writing to exercise an option granted to it or them pursuant to this Agreement, it shall be unnecessary for the remainder of that option period to expire before another option period or other rights pursuant to this Agreement accrue.

6.07   Governing Law.  This Agreement shall be construed in accordance with, and governed by, the laws of the State of Wisconsin.

6.08   Counterpart Execution.  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, and all of which when taken together shall be deemed to be an Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

INDIAN TARAC COMPANY, INC.

By _____
   Rakesh Patel, President

ORIGINAL STOCKHOLDERS

_____
K. C. Stock

_____
Rakesh Patel

_____
Philip S. Zanghi, III

_____
Divine Patel

FROM : Panasonic FAX SYSTEM          PHONE NO. :                    Oct. 02 1998 08:59AM P9

FROM : Panasonic FAX SYSTEM          PHONE NO. :                    Sep. 23 1999 12:35PM P4

6.04    **Successors.** This Agreement shall bind the respective parties, jointly and severally, their successors, assigns, administrators and executors.

6.05    **Arbitration.** In the event that any controversy or claim arising out of this Agreement cannot be settled by the parties, such controversy or claim shall be settled by arbitration in accordance with the then current rules of the American Arbitration Association, and judgment upon the award may be entered in any court having jurisdiction thereof.

6.06    **Option Periods.** If the Corporation or all of the Stockholders expressly decline in writing to exercise an option granted to it or them pursuant to this Agreement, it shall be unnecessary for the remainder of that option period to expire before another option period or other rights pursuant to this Agreement accrue.

6.07    **Governing Law.** This Agreement shall be construed in accordance with, and governed by, the laws of the State of California.

6.08    **Counterpart Execution.** This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, and all of which when taken together shall be deemed to be an Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement the day and year first above written.

INDIAN TABAC COMPANY, INC.

By _____
Philip S. Zanghi, III, President

By _____
Rakesh Patel, Executive Vice President

ORIGINAL STOCKHOLDERS

_____
K. C. Stock

_____
Rakesh Patel

_____
Philip S. Zanghi, III

FROM : Panasonic FAX SYSTEM          PHONE NO. :                    Oct. 02 1998 09:00AM P11

FROM : Panasonic FAX SYSTEM          PHONE NO. :                    Sep. 23 1998 12:34PM P1

310- 581- 4339

This Unanimous Written Consent may be executed in one or more counterparts, each of which shall be an original and all of which together shall be one and the same instrument. This Unanimous Written Consent shall be filed in the Minute Book of this corporation and become a part of the records of this corporation.

Dated as of: 9/23/98 , 1998

_____
Pravins Patel

_____
Dinesh Patel

_____
Bernard Euless

_____
Brad Warrington

_____
Jay Singlatary

_____
Rakesh Patel

_____
Philip Zeagel, III

_____
K. C. Stock

FROM : Panasonic FAX SYSTEM          PHONE NO. :                    Oct. 02 1998 08:57AM P5

FROM : Panasonic FAX SYSTEM          PHONE NO. :                    Sep. 28 1998 12:01PM P2

FROM : Panasonic FAX SYSTEM          PHONE NO. :                    Sep. 23 1998 12:34PM P1

310- 581- 4374

This Unanimous Written Consent may be executed in one or more counterparts, each of which shall be an original and all of which together shall be one and the same instrument. This Unanimous Written Consent shall be filed in the Minute Book of this corporation and become a part of the records of this corporation.

Dated as of **9/23/98**, 1998.

_____

_____

_____

_____

_____

2

FROM : Panasonic FAX SYSTEM         PHONE NO. :              Oct. 02 1998 08:57AM P4
       SEP-28-1998  13:30  FROM  WILSHIRE COSTA MESA      TO      1310581433¶    P.02/02

ROM : Panasonic FAX SYSTEM         PHONE NO. :          Sep. 28 1998 12:11PM P2

   FROM : Panasonic FAX SYSTEM       PHONE NO. :         Sep. 27 1998 12:34PM P1

310- 581-4334

This Unanimous Written Consent may be executed in one or more counterparts, each of which shall be an original and all of which together shall be one and the same instrument. This Unanimous Written Consent shall be filed in the Minute Book of this corporation and ...

Dated as of  9/23/98 , 1998

_Franklin Patel_

_D'Anne Brown_

_Barnett Euler_

_Brad Warmington_

_Raj Shekhwar_

_Harley Earl, III_

_K. C. Stock_

1.

TOTAL P.02

# Exhibit 2



June 18,2021

Mr. Rocky Patel
CEO
Rocky Patel Premium Cigars, Inc.
10960 Harmony Park Drive
Bonita Springs, Florida 34135

Edmond E. Koester
Coleman Yanovich Koester
4001 Tamiani Trail North Suite 300
Naples, Florida 34103

*Via email and certified mail*

Re: __Brad Warrington Sale of Shares.__

Dear Mr. Patel,

As you are aware, we represent Brad Warrington who owns 7,010 shares of common stock in Rocky Patel Premium Cigars, Inc. ("RPPC").

A month ago, I sent an email to Mr. Koester which further outlined my client's position and frustration with your bad faith efforts to provide information concerning you and the company and undervalue his shares. I also mentioned in my email that I have been discussing the purchase of my client's shares with several parties who believe there is significant upside in owning a part of RPPC. As I did not receive a reply, I have moved forward with the buyers.

In accordance with the Buy-Sell Agreement of September 1998 and specifically Paragraph 2. this letter shall serve as written notice of my client's desire to sell all of his shares in RPPC as follows:

1. 7,010 shares.
2. Special Purpose Vehicle ("SPV") Whitefish Bay.
3. $7,590,000 USD with 10% deposit and balance upon completion of due diligence and transfer of shares.



Please be advised that the Corporation has 30 days from receipt of this letter to exercise its' option to purchase the shares.

Regards,

Frank Caruso
Attorney

Cc: Ed Koester
Cc: Brad Warrington

# Exhibit
# 3



August 23, 2021

Mr. Rocky Patel
CEO
Rocky Patel Premium Cigars, Inc.
10960 Harmony Park Drive
Bonita Springs, Florida 34135

Edmond E. Koester
Coleman Yanovich Koester
4001 Tamiani Trail North Suite 300
Naples, Florida 34103

*Via email and certified mail*

**Re: <u>Brad Warrington Sale of Shares.</u>**

Dear Mr. Patel,

As you are aware, we represent Brad Warrington who owns 7,010 shares of common stock in Rocky Patel Premium Cigars, Inc. ("RPPC").

On June 18, 2021 we notified you and received confirmation of receipt from Mr. Koester of our client's intention to sell his RPPC shares. In accordance with the Buy Sell Agreement of September 1998 you have had enough time to consider a purchase of the shares by RPPC or other interested parties. Given that we have not received a reply concerning our letter or RPPC's desire to purchase the shares we must move forward in completing the transaction.

In preparation of the transaction and upon our receipt of the down-payment of $759,000.00 USD we request that RPPC open a virtual data room for due diligence. In the data room we expect the documents that are listed in the enclosure to this letter "Information Request Virtual Data Room". Our client would like to complete the transaction in the 4th quarter of 2021 and your cooperation in providing the information is appreciated.



Should you have any questions or would like to discuss this matter please contact me at frank@ca-advisory.com or (512) 5662637.

Regards,



Frank Caruso
Attorney

Enclosure: Information Request Virtual Data Room

Cc: Ed Koester
Cc: Brad Warrington

# Exhibit

# 4



September 10, 2021

Mr. Rocky Patel
CEO
Rocky Patel Premium Cigars, Inc.
10960 Harmony Park Drive
Bonita Springs, Florida 34135

Edmond E. Koester
Coleman Yanovich Koester
4001 Tamiani Trail North Suite 300
Naples, Florida 34103

*Via email and certified mail*

Re:  **Brad Warrington Sale of Shares.**

Dear Mr. Patel,

As you are aware, we represent Brad Warrington who owns 7,010 shares of common stock in Rocky Patel Premium Cigars, Inc. ("RPPC").

In accordance with the 1998 Buy-Sell Agreement on June 18, 2021 I emailed a letter to you, your attorney Ed Koester and Ms. Stoeva at the CYK Law Firm (a copy is attached).  Three days later on June 21, 2021 Mr. Koester replied by email to me, copying yourself, Alex Figares and Danielle Parliament that he had "Received." my letter (a copy is attached).  In complying with the 1998 Buy Sell Agreement specifically Section 2. Sale or Transfer of Common Stock and Section 2.01 Notice of Proposed Transfer, our letter satisfied the written notice requirement and receipt was acknowledged by Mr. Koester.  In addition the letter specified the number of shares to be disposed of, the name of the proposed transferee and the amount and terms of the consideration to be received for the shares which is required by Section 2.01.  I'm not sure what letter your attorney Mr. Figares was reading when he raised allegations in his letter dated September 1, 2021, but, we are certain that we have complied with the 1998 Buy-Sell Agreement and are confident of prevailing in arbitration and litigation.



In our letter of June 18, 2021 we were kind enough to remind you that RPPC had 30 days after receipt of notice to exercise your option to purchase the shares under the Buy Sell Agreement, specifically Section 2.02.  <u>As Mr. Koester acknowledged receipt on June 21, 2021 the period for RPPC to exercise its' option expired on July 21, 2021</u>.  We did not receive any email or other correspondence from you or Mr. Koester during this period only a letter from Mr. Figares on June 25, 2021 after the 30 day period expired and which did not address my letter of June 18, 2021.  On August 23, 2021 more than 60 days after our notice of intention to sell shares, we sent a letter requesting that RPPC establish a Data Room so that our potential purchaser can conduct due diligence and my client can complete the transaction (a copy is attached).  Given that we have requested detailed information concerning the company from you for more than 5 years in meetings, Section 220 requests and other correspondence; and you have and continue to ignore our requests for information that should be provided to minority shareholders, your bad faith has forced my client to proceed with a sale of his shares at a significant discount.  As RPPC or the other Shareholders have not exercised their option to purchase my clients' shares he is entitled to sell his shares as set forth in Section 2.04 of the 1998 Buy Sell Agreement.

We now <u>again</u> request that you establish the Data Room so that my client can complete his share sale.  Economic hardships due to Covid have forced my client to sell his shares at a discounted price and the buyers have agreed to proceed with a purchase of a portion of the shares in good faith that we will provide the necessary information for their due diligence.

Upon completion of the transaction we will provide you with copies of the Share Purchase Agreement and information concerning the new Shareholders.  We will expect RPPC to register the share transfer in the Corporate Share Registry upon the new shareholders becoming signatories to the 1998 Buy Sell Agreement as required in Section 2.04.

In advance we appreciate your cooperation in this matter.  Should you have any questions or would like to discuss this please contact me at frank@ca-advisory.com or (512) 5662637.

Regards,

Frank Caruso
Attorney

Cc: Ed Koester
Cc: Brad Warrington
Enclosures



August 23, 2021

Mr. Rocky Patel
CEO
Rocky Patel Premium Cigars, Inc.
10960 Harmony Park Drive
Bonita Springs, Florida 34135

Edmond E. Koester
Coleman Yanovich Koester
4001 Tamiani Trail North Suite 300
Naples, Florida 34103

*Via email and certified mail*

**Re:  Brad Warrington Sale of Shares.**

Dear Mr. Patel,

As you are aware, we represent Brad Warrington who owns 7,010 shares of common stock in Rocky Patel Premium Cigars, Inc. ("RPPC").

On June 18, 2021 we notified you and received confirmation of receipt from Mr. Koester of our client's intention to sell his RPPC shares.  In accordance with the Buy Sell Agreement of September 1998 you have had enough time to consider a purchase of the shares by RPPC or other interested parties.  Given that we have not received a reply concerning our letter or RPPC's desire to purchase the shares we must move forward in completing the transaction.

In preparation of the transaction and upon our receipt of the down-payment of $759,000.00 USD we request that RPPC open a virtual data room for due diligence.  In the data room we expect the documents that are listed in the enclosure to this letter "Information Request Virtual Data Room".  Our client would like to complete the transaction in the 4th quarter of 2021 and your cooperation in providing the information is appreciated.



Should you have any questions or would like to discuss this matter please contact me at
frank@ca-advisory.com or (512) 5662637.

Regards,

Frank Caruso
Attorney

Enclosure: Information Request Virtual Data Room

Cc: Ed Koester
Cc: Brad Warrington



June 18, 2021

Mr. Rocky Patel
CEO
Rocky Patel Premium Cigars, Inc.
10960 Harmony Park Drive
Bonita Springs, Florida 34135

Edmond E. Koester
Coleman Yanovich Koester
4001 Tamiani Trail North Suite 300
Naples, Florida 34103

*Via email and certified mail*

Re:  **Brad Warrington Sale of Shares.**

Dear Mr. Patel,

As you are aware, we represent Brad Warrington who owns 7,010 shares of common stock in Rocky Patel Premium Cigars, Inc. ("RPPC").

A month ago, I sent an email to Mr. Koester which further outlined my client's position and frustration with your bad faith efforts to provide information concerning you and the company and undervalue his shares.  I also mentioned in my email that I have been discussing the purchase of my client's shares with several parties who believe there is significant upside in owning a part of RPPC.  As I did not receive a reply, I have moved forward with the buyers.

In accordance with the Buy-Sell Agreement of September 1998 and specifically Paragraph 2. this letter shall serve as written notice of my client's desire to sell all of his shares in RPPC as follows:

1. 7,010 shares.
2. Special Purpose Vehicle ("SPV") Whitefish Bay.
3. $7,590,000 USD with 10% deposit and balance upon completion of due diligence and transfer of shares.



Please be advised that the Corporation has 30 days from receipt of this letter to exercise its' option to purchase the shares.

Regards,

Frank Caruso
Attorney

Cc: Ed Koester
Cc: Brad Warrington

From : ekoester@cyklawfirm.com
To : "frank caruso"< frank@ca-advisory.com>
CC : rocky@rockypatel.com, RStoeva@cyklawfirm.com, afigares@cyklawfirm.com,
dparliament@cyklawfirm.com
Date : Mon, 21 Jun 2021 09:44:22 -0500
Subject : Re: Sale of Brad Warrington's shares in RPPC

Frank,

Received.  My Team did not receive a response to the letter that Alex Figares sent you.  I did not receive the email you referenced.  Please resend.  We will discuss with Rocky and get back with you.

Ed


On Jun 18, 2021, at 3:43 PM, frank caruso <frank@ca-advisory.com> wrote:

Dear Ed, please find attached letter concerning my client's shares in RPPC.

Regards
Frank



Frank Caruso
Attorney and Managing Director
C&A Advisory, LLC
USA Mobile: +15125662637
ca-advisory.com

Mr. Caruso is a U.S. licensed attorney and advises clients on corporate and International legal issues. This E-mail is confidential and protected by the attorney-client relationship. It may also be legally privileged. If you are not the addressee you may not copy, forward, disclose or use any part of it. If you have received this message in error, please delete it and all copies from your system and notify the sender immediately by return E-mail. Internet communications cannot be guaranteed to be timely, secure, error or virus-free. The sender does not accept liability for any errors or omissions. As required by U.S. Treasury Regulations governing tax practitioners, any written tax advice contained herein cannot be used by any taxpayer for the purpose of avoiding certain tax penalties that may be imposed under the Internal Revenue Code.



<Letter to Rocky Patel Sale of Shares 6-18-21.pdf>

Edmond E. Koester
Coleman, Yovanovich & Koester, P.A.
4001 Tamiami Trail North, Suite 300
Naples, Florida 34103
Phone: 239-435-3535
Fax: 239-435-1218
ekoester@cyklawfirm.com

# Exhibit
# 5



October 15, 2021

Mr. Rocky Patel
CEO
Rocky Patel Premium Cigars, Inc.
10960 Harmony Park Drive
Bonita Springs, Florida 34135

Edmond E. Koester
Coleman Yanovich Koester
4001 Tamiani Trail North Suite 300
Naples, Florida 34103

*Via email and certified mail*

**Re:  Brad Warrington Sale of Shares.**

Dear Mr. Patel,

As you are aware, we represent Brad Warrington who owns 7,010 shares of common stock in
Rocky Patel Premium Cigars, Inc. ("RPPC").

I am in receipt of your letter dated September 27, 2021.

Please find enclosed an executed Stock Purchase Agreement ("SPA") with relevant attachments.
As per the SPA the deposit for the sale of my client's shares will be received by October 29, 2021.
We will then have 10 days, per the Buy-Sell Agreement to provide the Purchaser with the
documents of transfer, including but not limited to share certificate and evidence of transfer in the
company stock ledger. As my client has never received an actual share certificate please prepare
per the terms of the Stock Purchase Agreement along with a copy of the transfer in the Company
stock ledger and mail to our office in the enclosed envelope.



In advance we appreciate your cooperation in this matter.  Should you have any questions or would like to discuss this please contact me at frank@ca-advisory.com or (512) 5662637.

Regards,

Frank Caruso
Attorney

Cc: Ed Koester
Cc: Brad Warrington
Enclosures

# Exhibit 6



October 25, 2019

Mr. Rocky Patel
CEO
Rocky Patel Premium Cigars, Inc.
10960 Harmony Park Drive
Bonita Springs, Florida 34135

*Via email and certified mail*

**Re:  <u>Demand To Inspect Books And Records Pursuant To The Delaware</u>**
**<u>General Corporation Law § 220, Related To Rocky Patel Premium Cigars, Inc.</u>**

Dear Mr. Patel,

We represent Brad Warrington who owns 7,010 shares of common stock of Rocky Patel Premium Cigars, Inc. ("RPPC") (previously d/b/a "Indian Tabac-Company, Inc."). Attached as Exhibit A is a true and correct copy of a statement reflecting Mr. Warrington's continuous ownership of common stock. Pursuant to Delaware's General Corporation Law § 220 ("Section 220"), we hereby make the following verified Demand for inspection of the books and records identified below.

**<u>Background</u>**

Brad Warrington is a founding shareholder and, other than Rocky Patel's family members, the only remaining minority shareholder in RPPC and owns 7,010 shares or 6.25% . Mr. Warrington has owned his shares for 23 years, since the founding of Indian Tabac-Company, Inc., in 1996, which was changed to RPPC in 2011. During this 23 year period Mr. Warrington has complied with all requests from RPPC when Mr. Patel desired to purchase minority shares, issue shares to his brother and cousin, and transfer his shares to the Rakesh P. Patel Living Trust, among many other requests. As far as Mr. Warrington is aware, for the past 12 years Rocky Patel has earned a salary of $1,820,000 and an annual bonus of $2,000,000. From our information, RPPC has net annual profit in excess of $3,000,000. At only one time during the past 23 years has a dividend been paid to any shareholders while Mr. Patel receives an annual bonus of $2,000,000. In addition, from our information and analysis, the minority shareholders are not clear on the culmination of retained earnings and their use. Assuming that RPPC earned $2,000,0000 in net profit for the previous 10 years, that would leave RPPC with $20,000,000 in retained earnings. Mr. Warrington desires access to all of the records of Indian Tabac Company, Inc., and RPPC



since its founding by Mr. Patel, Mr. Warrington, and other shareholders as Mr. Warrington is entitled to such records and information under Delaware law as a shareholder. There are other issues impacting Mr. Warrington's shareholding, including but not limited to, intellectual property owned by RPPC and Mr. Patel; royalties paid for intellectual property; loans to Mr. Patel from RPPC; loans to RPPC from banks and/or third parties; arm's length transactions with any and all companies owned by Mr. Patel and/or his relatives; and, property owned by RPPC, Mr. Patel and/or his relatives. None of this information has been disclosed to Mr. Warrington by RPPC or Mr. Patel.

**Basis for Books-and-Records Demand**

Based on the above facts, we believe that there are significant discrepancies within Rocky Patel Premium Cigars, Inc. and its disclosures and obligations to all shareholders such as:

- The actual asset value of RPPC.
- Transactions between RPPC and Rocky Patel as an individual.
- Transactions between RPPC and all third parties, including but not limited to relatives of Rocky Patel, friends and associates of Rocky Patel, companies owned by Rocky Patel, and/or his friends or relatives.
- Real property in the United States or foreign countries owned by RPPC, Rocky Patel and/or Rocky Patel's relatives, friends, or companies.
- State, Federal and foreign licenses owned by RPPC, Rocky Patel, including but not limited to relatives of Rocky Patel, friends and associates of Rocky Patel, and companies owned by Rocky Patel, and/or his friends or relatives.
- Banking relationships of RPPC and Rocky Patel.
- Ownership, licensing, franchising, royalties between RPPC, Rocky Patel and any associated companies or relatives of Rocky Patel in "Burn by Rocky Patel" including but not limited to the locations in Naples, Atlanta, Pittsburgh, Indianapolis, and Oklahoma City.

**Books and Records Demanded**

Based on the reasons set forth above, a credible basis exists to find probable corporate wrongdoing. Mr. Warrington demands that Rocky Patel Premium Cigars, Inc. produce the following books and records within usual business hours for inspection and copying. The relevant time period for this Demand is from 1998 through the present (the "Relevant Period"). The information sought by this Demand includes but is not limited to:

1. All books and records dated or created during the Relevant Period related to any proceedings of Rocky Patel Premium Cigars, Inc.'s Board or a committee of the



Board if those proceedings in any way relate to the facts in question. This request includes but is not limited to minutes of meetings of the Board or its committees.

2. All books and records dated or created during the Relevant Period related to the company disclosures, in its financial statements, proxy statements, and other filings with the Securities and Exchange Commission or the Internal Revenue Service, regarding the facts Mr. Warrington seeks to investigate.

3. All books and records dated or created during the Relevant Period related to the company disclosures held by Rocky Patel Premium Cigar's Chief Financial Officer.

4. All other books and records dated or created during the Relevant Period related to the facts Mr. Warrington seeks to investigate.

For purposes of this Demand, the term "books and records" shall mean and include all paper or electronic documents and records, including, but not limited to, all memoranda, letters, minutes, resolutions, invoices, agreements, ledgers, reports, emails, transcripts, statements, instant messages, files, database records, spreadsheets, bank statements, photographs, and audio or video recordings, whether in the files of individuals, shared files, computer hard drives, network drives, optical storage disks, tape backups, flash drives, or any other storage device or medium, whether sent, received, created, or collected by the company or by any officer, director, employee, or agent of the company. Additionally, the term "books and records" shall include all of the documents and records indicated above that are in the custody, possession, or control of the company or its agents. The above list is not meant to be exclusive, but instead sets forth by example the types of materials the company should make available.

This Demand is being made in good faith and for a proper purpose to enable Mr. Warrington to: (1) investigate corporate mismanagement, waste, or wrongdoing in connection with the facts Mr. Warrington seeks to investigate, including but not limited to determining whether the company officers and/or directors have properly discharged their fiduciary duties to Rocky Patel Premium Cigars, Inc. and its stockholders; (2) investigate whether the company accurately disclosed to stockholders the facts Mr. Warrington seeks to investigate; (3) obtain information to determine whether or not the company's officers and/or directors are independent and disinterested, and whether they have acted in good faith; and (4) take any appropriate action in the event that any wrongdoing is revealed. These purposes are reasonably related to Mr. Warrington's interest as a stockholder.



Please respond to this Demand by contacting C&A Advisory within five (5) business days after the date of receipt of this Demand to advise when and where the items demanded will be made available for inspection and copying.

We believe that this Demand complies with the provisions of Section 220 in all material respects. If the company believes that this Demand is incomplete or otherwise deficient in any respect, or if all of the items requested above cannot be made available to us within the time frame requested, please contact me immediately in writing. Such correspondence shall set forth the facts that the company contends support its position, and shall specify, as appropriate, any additional information believed to be required, so that any purported deficiencies may be addressed promptly.

In the absence of such notice, we will assume that the company agrees that this Demand complies in all respects with the requirements of Section 220. Mr. Warrington reserves the right to withdraw or modify this Demand at any time.

Frank Caruso
Attorney

Cc: Brad Warrington

# Exhibit 7



January 2, 2020

Mr. Rocky Patel
CEO
Rocky Patel Premium Cigars, Inc.
10960 Harmony Park Drive
Bonita Springs, Florida 34135

*Via email and certified mail*

**Re:  Demand To Inspect Books And Records Pursuant To The Delaware
General Corporation Law § 220, Related To Rocky Patel Premium Cigars, Inc.**

Dear Mr. Patel,

As you know, we represent Brad Warrington who owns 7,010 shares of common stock of Rocky Patel Premium Cigars, Inc. ("RPPC"). Pursuant to Delaware's General Corporation Law § 220 ("Section 220"), we made a verified Demand for inspection of the books and records on October 25, 2019.

Pursuant to Section 220, you are required to respond to that Demand by contacting C&A Advisory within five (5) business days after the date of receipt of the Demand to advise when and where the items demanded will be made available for inspection and copying.  While you have not complied with our demand, we have been in discussion concerning a settlement of this matter and consider our demand on hold as long as we continue having positive discussions concerning our Client's rights as a shareholder.

Mr. Muchala has provided internally prepared and audited financial statements from 2001 until 2018.  We request audited financials which we did not receive for years 2001-2006.  In addition, we would like to have year-end financial statements for all years prior to 2001 as well as RPPC, Inc. State and Federal Tax returns for 1998 through 2018.  Given that you have essentially treated RPPC, Inc. as an extension of yourself we would like to have your State and Federal Tax returns from 1998 through 2018.



This letter is without prejudice to any other rights or remedies available to our client.

We await your prompt reply and the aforementioned documents.

Regards,

Frank Caruso
Attorney


Cc: Brad Warrington

# Exhibit
# 8



March 12, 2021

Mr. Rocky Patel
CEO
Rocky Patel Premium Cigars, Inc.
10960 Harmony Park Drive
Bonita Springs, Florida 34135

Edmond E. Koester
Coleman Yanovich Koester
4001 Tamiani Trail North Suite 300
Naples, Florida 34103

*Via email and certified mail*

**Re: <u>Demand To Inspect Books And Records Pursuant To The Delaware
General Corporation Law § 220, Related To Rocky Patel Premium Cigars, Inc.</u>**

Dear Mr. Patel,

As you are aware, we represent Brad Warrington who owns 7,010 shares of common stock of Rocky Patel Premium Cigars, Inc. ("RPPC") (previously d/b/a "Indian Tabac-Company, Inc."). Attached as Exhibit A is a true and correct copy of a statement reflecting Mr. Warrington's continuous ownership of common stock.

On October 25, 2019 we sent a letter demanding to inspect the books and records under Delaware's General Corporation Law § 220 ("Section 220") (enclosed). On January 2, 2020 we sent another letter reaffirming our rights and demand and requesting additional documents (enclosed). Since that time we have had discussions, meetings in Florida and on Zoom, negotiations and a written offer (November 3, 2020) of $2,831,766.00 for Mr. Warrington's share (enclosed). In 2021, you communicated with Mr. Warrington that you are preparing another valuation and will provide to Mr. Warrington, although he has not received any additional valuation or offer.

In addition to your preparations of a valuation Mr. Warrington will retain professionals to prepare a valuation. While we will utilize existing documents that you have provided, in order to complete a fair and accurate valuation there remains documents and information that we have yet to receive.



Therefore, we must demand and enforce our rights under Section 220 for inspection of the books and records identified below.

## Basis for Books-and-Records Demand

Based on the above facts, we believe that there are significant discrepancies within Rocky Patel Premium Cigars, Inc. and its disclosures and obligations to all shareholders such as:

- The actual asset value of RPPC.
- Self-dealing between RPPC and Rocky Patel as an individual.
- Self-dealing between RPPC and all third parties, including but not limited to relatives of Rocky Patel, friends and associates of Rocky Patel, companies owned by Rocky Patel, and/or his friends or relatives.
- Real property in the United States or foreign countries owned by RPPC, Rocky Patel and/or Rocky Patel's relatives, friends, or companies.
- State, Federal and foreign licenses owned by RPPC, Rocky Patel, including but not limited to relatives of Rocky Patel, friends and associates of Rocky Patel, and companies owned by Rocky Patel, and/or his friends or relatives.
- Banking relationships of RPPC and Rocky Patel.
- Ownership, licensing, franchising, royalties between RPPC, Rocky Patel and any associated companies or relatives of Rocky Patel in "Burn by Rocky Patel" including but not limited to the locations in Naples, Atlanta, Pittsburgh, Indianapolis, and Oklahoma City.

## Books and Records Demanded

Based on the reasons set forth above, a credible basis exists to find probable corporate wrongdoing. Mr. Warrington demands that Rocky Patel Premium Cigars, Inc. produce the following books and records within usual business hours for inspection and copying. The relevant time period for this Demand is from 1998 through the present (the "Relevant Period"). The information sought by this Demand includes but is not limited to:

1. All books and records dated or created during the Relevant Period related to any proceedings of Rocky Patel Premium Cigars, Inc.'s Board or a committee of the Board if those proceedings in any way relate to the facts in question. This request includes but is not limited to minutes of meetings of the Board or its committees.
2. All books and records dated or created during the Relevant Period related to the company disclosures, in its financial statements, proxy statements, and other filings with the Securities and Exchange Commission or the Internal Revenue Service, regarding the facts Mr. Warrington seeks to investigate.



3. All books and records dated or created during the Relevant Period related to the company disclosures held by Rocky Patel Premium Cigar's Chief Financial Officer.
4. All State and Federal Tax returns during the Relevant Period filed by RPPC as a corporation and Rocky Patel as an individual.
5. All bank statements for the Relevant Period of RPPC and Rocky Patel.
6. All other books and records dated or created during the Relevant Period related to the facts Mr. Warrington seeks to investigate.
7. 2019 and 2020 Financial Statements of RPPC.
8. All sales data from Domestic and International sales of RPPC products during the Relevant Period.

For purposes of this Demand, the term "books and records" shall mean and include all paper or electronic documents and records, including, but not limited to, all memoranda, letters, minutes, resolutions, invoices, agreements, ledgers, reports, emails, transcripts, statements, instant messages, files, database records, spreadsheets, bank statements, income tax returns, photographs, and audio or video recordings, whether in the files of individuals, shared files, computer hard drives, network drives, optical storage disks, tape backups, flash drives, or any other storage device or medium, whether sent, received, created, or collected by the company or by any officer, director, employee, or agent of the company. Additionally, the term "books and records" shall include all of the documents and records indicated above that are in the custody, possession, or control of the company or its agents. The above list is not meant to be exclusive, but instead sets forth by example the types of materials the company should make available.

This Demand is being made in good faith and for a proper purpose to enable Mr. Warrington to: (1) investigate corporate mismanagement, waste, or wrongdoing in connection with the facts Mr. Warrington seeks to investigate, including but not limited to determining whether the company officers and/or directors have properly discharged their fiduciary duties to Rocky Patel Premium Cigars, Inc. and its stockholders; (2) investigate whether the company accurately disclosed to stockholders the facts Mr. Warrington seeks to investigate; (3) obtain information to determine whether or not the company's officers and/or directors are independent and disinterested, and whether they have acted in good faith; (4) take any appropriate action in the event that any wrongdoing is revealed; and, (5) prepare a current valuation of RPPC. These purposes are reasonably related to Mr. Warrington's interest as a stockholder.

Please respond to this Demand by contacting C&A Advisory within five (5) business days after the date of receipt of this Demand to advise when and where the items demanded will be made available for inspection and copying.

We believe that this Demand complies with the provisions of Section 220 in all material respects. If the company believes that this Demand is incomplete or otherwise deficient in any respect, or if



all of the items requested above cannot be made available to us within the time frame requested, please contact me immediately in writing. Such correspondence shall set forth the facts that the company contends support its position, and shall specify, as appropriate, any additional information believed to be required, so that any purported deficiencies may be addressed promptly.

In the absence of such notice, we will assume that the company agrees that this Demand complies in all respects with the requirements of Section 220. Mr. Warrington reserves the right to withdraw or modify this Demand at any time.

If you have any questions or would like to discuss this matter you can reach me at (512) 566-2637 or at frank@ca-advisory.com.

Regards,

Frank Caruso
Attorney

Enclosures
Cc: Brad Warrington

JS 44 (Rev. 04/21)  **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Brad Warrington

**DEFENDANTS**

Rocky Patel Premium Cigars, Inc.; Rakesh Patel

**(b)** County of Residence of First Listed Plaintiff  Out of State
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  Collier
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

C&A Advisory, LLC 512-566-2637
100 Congress Avenue Suite 2000 Austin, Texas 78701

Attorneys *(If Known)*

Alex R. Figares 239-435-3535
4001 Tamiami Trail N, Suite 300, Naples FL 34103

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant*)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*  Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| ☒ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | Act | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Leave Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 790 Other Labor Litigation | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | Income Security Act | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File | |

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332
Brief description of cause:
Breach of fiduciary duty/minority shareholder oppression; breach of contract; tortious interference with contract

**VII. REQUESTED IN COMPLAINT:**  ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $ $30,000,000
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**  *(See instructions):*
JUDGE  Hugh D. Hayes
DOCKET NUMBER  11-2021-CA-001875-0001-XX

DATE  2/4/22
SIGNATURE OF ATTORNEY OF RECORD  /s/ Taylor Allyn

**FOR OFFICE USE ONLY**

RECEIPT #  AMOUNT  APPLYING IFP  JUDGE  MAG. JUDGE

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida, Ft Myers ▾

| | |
|---|---|
| Brad Warrington | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |
| *Plaintiff(s)* | ) |
| v. | ) |
| Rakesh Patel; and | ) |
| Rocky Patel Premium Cigars, Inc. | ) |
| | ) |
| | ) |
| _____ | ) |
| *Defendant(s)* | ) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Mr. Rakesh Patel
CEO
Rocky Patel Premium Cigars, Inc.
10960 Harmony Park Dr.
Bonita Springs, FL 34135

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Frank Caruso
C&A Advisory, LLC
100 Congress Ave, Suite 2000
Austin, TX 78701

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida, Ft Myers  ▼

| | |
|---|---|
| Brad Warrington<br><br>_____<br>*Plaintiff(s)*<br>v.<br>Rakesh Patel; and<br>Rocky Patel Premium Cigars, Inc.<br><br>_____<br>*Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Rocky Patel Premium Cigars, Inc.
FARMER & ASSOCIATES, PLLC
999 VANDERBILT BEACH ROAD
SUITE 501
NAPLES, FL 34108

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Frank Caruso
C&A Advisory, LLC
100 Congress Ave, Suite 2000
Austin, TX 78701

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*