UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRAD WARRINGTON,

      Plaintiff,

v.                     Case No:  2:22-cv-77-JES-MRM

ROCKY PATEL PREMIUM CIGARS,
INC. and RAKESH PATEL,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on defendants' Motion to Dismiss, Abate, Stay, or Remand (Doc. #13) filed on February 24, 2022.  Plaintiff filed a Response in Opposition (Doc. #27) on March 16, 2022, to which defendant replied (Doc. #30) on March 25, 2022. For the reasons set forth below, the motion is denied.

**I.**

This matter concerns a dispute between shareholders of a closely held corporation. In 1996, plaintiff Brad Warrington (Plaintiff or Warrington) partnered with his neighbor, Rocky Patel (Rocky), and formed a cigar company in North Carolina known as Indian Tabac-Company, Inc. (Doc.#1, ¶ 13.) In 1998, Warrington entered into a Buy-Sell Agreement (the 1998 Agreement) with seven other individuals and the Indian-Tabac-Company. (Id., ¶ 14.) Among other things, the 1998 Agreement requires written notice before a

1

shareholder can sell their company shares and mandates regular valuations of the company every two years. (Id.)

In 2004, the Indian-Tabac Company received authorization to do business in Florida, and a few years later, was renamed Rocky Patel Premium Cigars, Inc. (Patel Cigars or the Corporation). (Id., ¶ 15.) Patel Cigars is now one of the world's leading premium cigar brands and is located in Collier County, Florida. (Id., ¶¶ 6, 19.) Warrington is a minority shareholder (with 6.05% shares) in Patel Cigars, while Rocky is the president and majority shareholder (with 93% shares) of the Corporation. (Id., ¶¶ 10-11, 16-17.)

In 2015, Warrington began verbal discussions with Patel Cigars about selling or transferring his shares in the Corporation. Rocky made a verbal offer of $1 million to buy Warrington's shares in Patel Cigars, which was significantly lower than Rocky's purported valuation of the Corporation – $150 Million. (Id., ¶¶ 20-22.) Warrington later obtained an independent evaluation of his accrued shareholder interest in Patel Cigars, which totaled $13 Million. (Id., ¶ 22.)

In 2019, 2020, and 2021, Warrington made written requests for Patel Cigar's financial documents, including requisite bi-annual third-party company valuations, but he did not receive any such documents. (Id., ¶¶ 27-28.) In 2021, Warrington sent a letter to Patel Cigars indicating his desire to sell his shares in accordance

with the Agreement, with a purchase price of $7.5 million for 7,010 shares. (Id., ¶ 23.) Patel Cigars never responded to Warrington's offer, or letters requesting shares, a share certificate, and a virtual data room for a proposed buyer to conduct due diligence. (Id., ¶ 24.) As a result, Warrington was forced to enter into an agreement to sell only a portion of his shares at a discounted price. (Id., ¶ 25.)

On July 7, 2021, Rocky and Patel Cigars filed an action against Warrington in the Twentieth Judicial Circuit in and for Collier County, Florida, styled Rocky Patel Premium Cigars, Inc. v. Brad Warrington, Case No. 2021-CA-1875 (the State Action). (Doc. #13, p. 2.) A November 4, 2021 Amended Complaint sought a declaration that Patel Cigars had complied with all of its corporate disclosure obligations under Florida law, and asserted causes of action for breaches of contract and the covenant of good faith and fair dealing against Warrington concerning the sale of his shares in the Corporation. (Id., p. 3; Doc. #13-1.) More particularly, the State Action alleges that Warrington believes he was not provided access to Patel Cigar's financial and business records due him as a minority shareholder, but asserts that Rocky and Patel Cigars provided such documents. Rocky and Patel Cigars seek specific performance by requiring Warrington to sell his shares in conformance with the 1998 Agreement's express terms.

On January 3, 2022, Warrington filed a motion to dismiss the State Action, arguing that dismissal was proper due to a lack of personal jurisdiction and failure to state a cause of action, which remains pending. (Doc. #13-5.)

On February 4, 2022, Warrington filed a seven-count Complaint against defendants Rocky and Patel Cigars (collectively Defendants) in federal court on the basis of diversity jurisdiction. (Doc. #1, ¶¶ 5-8.) The Complaint alleges the following state-law claims: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) tortious interference with contract or business relationship; (4) breach of fiduciary duty - direct action; (5) breach of fiduciary duty – shareholder derivative action; (6) securities fraud and (7) punitive damages.[1] (Id., pp. 8-19.) Warrington alleges Defendants purposefully withheld corporate financial and business records, concealed the true value of Patel Cigars, and did not comply with their obligations under the 1998 Agreement — which resulted in

---

[1] Although Warrington's Complaint asserts a claim for "punitive damages" (Count 7), "a request for . . . punitive damages is not a cause of action." Younger v. C.M.C., SRL, No. 8:21-cv-1807-VMC-CPT, 2021 U.S. Dist. LEXIS 200940, at *5 (M.D. Fla. Oct. 19, 2021); see also Cohen v. Office Depot, Inc., 184 F.3d 1292, 1297 (11th Cir. 1999) ("It is clear . . . that a request for punitive damages is not a 'claim' within the meaning of [Federal Rule of Civil Procedure] 8(a)(2); it is only part of the relief prayed for in a claim.").

Warrington's inability to properly value his shares in the Corporation, and interfered with the sale of his shares. (<u>Id.</u>, pp. 5-19.)

## II.

Defendants argue that this federal action is nothing more than a shareholder dispute that should be decided under state law, and that Warrington's claims are compulsory counterclaims that must be asserted in response to the State Action. (Doc. #30, p. 1.) Defendants also move to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6), to remand the federal case to state court pursuant to 28 U.S.C. § 1447(c), or abate or stay the federal action. (Doc. #13, p. 2.)

### A. Rule 12(b)(6) – Motion to Dismiss

Defendants request that this Court dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). (Doc. #13, p. 7.) The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of the statement of claim for relief. <u>Brooks v. Blue Cross and Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1368 (11th Cir. 1997). <u>See also</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level."). Defendants do not, however, contest the sufficiency of the Complaint by pointing out any deficient allegations, but instead argue that this action is duplicative of the State Action

5

and should not proceed.  (Doc. #13, p. 7.) Accordingly, there is no basis to under Rule 12(b)(6) to dismiss the Complaint. Additionally, as a general matter, "a stay, not a dismissal, is the proper procedural mechanism for a district court to employment when deferring to a parallel state-court proceeding under the *Colorado River* doctrine." <u>Moorer v. Demopolis Waterworks & Sewer Bd.</u>, 374 F.3d 994, 998 (11th Cir. 2004).

**B. Remand To State Court Pursuant to 28 U.S.C. § 1447(c)**

Defendants assert that even though Warrington did not remove the State Action to federal court, his federal action should be remanded to state court, where the similar State Action is already pending pursuant to 28 U.S.C. § 1447(c).  (<u>Id.</u>, p. 7.) Defendants argue that Warrington's federal Complaint is based on the same exact issues before the state court, and in essence is an improper attempt to circumvent the 30-day deadline to remove a case from state to federal court. Thus, Defendants argue that allowing Warrington to proceed with his case in federal court would allow him to indirectly do what he cannot do under 28 U.S.C. § 1441.

There is no legal basis to "remand" a federal case to a state court from which it did not come. To remand a case to state court, the case must have been removed from state court to federal court. <u>See</u> 28 U.S.C. § 1447(a) ("In any case removed from a State court, . . . .") A federal court may only remand a case to "the State court from which it was removed . . . ." 28 U.S.C. § 1447(d). Here,

the case was directly filed in federal court, and therefore there is no statutory basis to "remand" it under § 1447(c) to a state court where it had never been. "Since there was no removal from state court there can be no remand to that court." <u>S. Shore Ranches, LLC v. Lakelands Co., LLC</u>, No. 1:09-cv-105 AWI DLB, 2009 U.S. Dist. LEXIS 42941, at *9 (E.D. Cal. May 13, 2009). Defendants' motion to remand this case to state court pursuant to 28 U.S.C. § 1447 is denied.

**C. Motion to Abate or Stay The Federal Action**

Defendants request that Warrington's federal action be abated or stayed until the completion of the State Action. (Doc. #13, p. 7.) Plaintiff responds that pendency of an action in state court does not bar federal court proceedings concerning the same matter, and courts have an obligation to exercise jurisdiction where it is proper. (Doc. #27, p. 4.) Plaintiff acknowledges that federal courts may abstain from an exercise of jurisdiction in the case of duplicative litigation in state courts, but only under exceptional circumstances, none of which are present here. (<u>Id.</u>) In sum, Plaintiff argues that his federal Complaint contains legitimate claims for relief unrelated to the legal and factual framework of the State Action, and thus the instant action should be allowed to proceed. (<u>Id.</u>)

A federal court may rarely stay an action or abstain from exercising its jurisdiction when litigation is pending in state

court, and then only in exceptional circumstances. Colorado River
Water Conserv. Dist. v. U.S., 424 U.S. 800, 817-18 (1976).  The
Eleventh Circuit has held that "federal courts should rarely yield
jurisdiction to a state court simply because litigation would be
duplicative—a pending action in state court does not normally bar
proceedings regarding the same matter in federal court." Baker v.
Warner/Chappell Music, Inc., 759 F. App'x 760, 762 (11th Cir.
2018)(citing Jackson-Platts v. Gen. Elec. Capital Corp., 727 F.3d
1127, 1140 (11th Cir. 2013)).  This is so, because federal courts
have a "virtually unflagging obligation . . . to exercise the
jurisdiction given them when it exists." Colorado River, 424 U.S.
at 817. "While abstention as a general matter is rare, Colorado
River abstention is particularly rare." Jackson-Platts, 727 F.3d
at 1140.  "Only the clearest of justification merits abstention."
Id. (internal quotation marks omitted).

    The State Action and Plaintiff's federal action are parallel
actions.  See Ambrosia Coal & Constr. Co. v. Morales, 368 F.3d
1320, 1329-30 (11th Cir. 2004). Both the state and federal lawsuits
involve the same parties – Warrington, Rocky, and Patel Cigars.
(Doc. #1; Doc. #13-1.) And even though the state and federal
litigation concern different causes of action, they both boil down
to substantially the same underlying issue: whether Warrington,
Rocky, and Patel Cigars fulfilled their respective duties and

obligations under the 1998 Agreement and applicable Florida state law.

Despite being parallel actions, it requires exceptional circumstances to justify abstention or a stay. The determination of whether exceptional circumstances exist requires consideration of seven factors:

> (1) whether the state or federal court has assumed jurisdiction over any property at issue; (2) the relative inconvenience of the federal forum; (3) the likelihood of "piecemeal litigation"; (4) the order in which the courts obtained jurisdiction; (5) whether state or federal law will be applied; (6) whether the state court can adequately protect the parties' rights; and (7) "the vexatious or reactive nature of either the federal or the state litigation."

Baker v. Warner/Chappell Music, Inc., 759 F. App'x 760, 763 (11th Cir. 2018) (citing Ambrosia Coal, 368 F.3d at 1331). The factors are applied in "a pragmatic, flexible manner with a view to the realities of the case at hand." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 21 (1983). "No one factor is necessarily determinative," Colorado River, 424 U.S. at 818, thus there is no "mechanical checklist." Moses H. Cone, 460 U.S. at 15-16. Therefore, these factors are to be balanced together "with the balance heavily weighted in favor of the exercise of jurisdiction." Id.

**(1)  First and Second Factors – Jurisdiction Over Property & Inconvenience of the Fora**

The first factor considers whether one court had assumed jurisdiction over property before the other court. Jackson-Platts, 727 F.3d at 1141.  The State Action and Warrington's federal claims do not concern *in rem* proceedings, nor has the Court taken jurisdiction over any property.  As to the second factor, convenience of the forum, neither party argues that the federal forum is less convenient than the state forum.  Thus, neither the first nor second factors weigh in favor of abstention.  See Baker, 759 F. App'x at 763.

**(2)  Third Factor – Potential for Piecemeal Litigation**

Defendants argue that the third factor weighs heavily in favor of abstention because the State Action and federal action consider essentially the same issues, and should each action proceed, there is a risk that each court will reach different results. (Doc. #30, pp. 7-8.)  Plaintiff disagrees, arguing his federal action contains several independent claims.  (Doc. #27, p. 6.)

"Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." CJS Sols. Grp., Ltd. Liab. Co. v. Tokarz, No. 3:20-cv-65-MMH-JRK, 2021 U.S. Dist. LEXIS 235717, at *10-11 (M.D. Fla. Dec. 9, 2021). The third factor weighs in favor of abstention only if the probability of piecemeal litigation is

"abnormally excessive and deleterious." Id. (quoting Jackson-Platts, 727 F.3d at 1142).  The dual proceedings will no doubt result in duplicative efforts and the possibility of inconsistent results, but the risk of piecemeal litigation is not significantly greater than in most other federal suits with a state counterpart. Thus, this factor does not favor abstention.

### (3)  Fourth Factor – Order of Jurisdiction

The fourth factor considers the order in which each court obtained jurisdiction.  "[D]espite somewhat misleading phrasing . . . [the fourth] factor 'should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" Ambrosia Coal, 368 F.3d at 1333 (quoting Moses H. Cone, 460 U.S. at 21). Moreover, "[t]his factor, as with the other . . . factors, is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." Moses H. Cone, 460 U.S. at 21.

Warrington's federal action was initiated on February 4, 2022, and discovery has been stayed pending the outcome of Defendant's motion in this case.  In comparison, the State Action was filed on July 7, 2021, an amended complaint was filed on November 4, 2021, and on December 7, 2021, Warrington filed a motion to dismiss the State Action (which to the Court's knowledge is still pending as of March 25, 2022).  Given that each action is in its beginning stages, discovery has yet to commence in either

action, and both actions have pending motions to dismiss, the fourth factor does not weigh in favor of abstention.

### (4)   Fifth and Sixth Factors – Application of State or Federal Law & Whether State Court Adequately Protects Rights

The fifth and sixth factors are neutral.  With respect to the fifth factor, whether state or federal law applies, it appears that Florida substantive law will govern the federal case, but federal courts routinely address such state-law claims. Jackson-Platts, 727 F.3d at 1143 (finding that this factor weighs in favor of abstention where the applicable state law is "particularly complex or best left for state courts to resolve"). Warrington has asserted breach of contract and fiduciary duty claims, as well as tortious interference with contract or business relationship and securities fraud claims, none of which present complex state-law issues that this Court is not well-equipped to resolve.  Given that the state law claims asserted in Warrington's federal action are not "particularly complex," this factor does not support abstention. Jackson-Platts, 727 F.3d at 1143; see Am. Bankers Ins. Co. of Fla. v. First State Ins. Co., 891 F.2d 882, 886 (11th Cir. 1990) ("Only in rare circumstances will the presence of a state law issue weigh in favor of dismissal." (marks and citation omitted)).

As to the sixth factor, there is no suggestion that either this Court or the state court cannot adequately protect the parties' rights, rendering this factor neutral. See Jackson-

Platts, 727 F.3d at 1143 ("[T]he fact that both forums are adequate to protect the parties' rights merely renders this factor neutral." (internal quote omitted)).

**(5)   Seventh Factor – Whether the State or Federal Action is Vexatious or Reactive**

The seventh factor is the vexatious or reactive nature of either the federal or state litigation. The timing of the filing of Warrington's federal lawsuit – just months after the filing of an amended complaint in the State Action – appears reactive, but Warrington could still raise his claims as counterclaims in the State Action.  There is no credible showing that the federal action is vexatious.  Thus, the apparent reactive nature of this suit is only a slight tip on the scale in favor of abstention.

Having balanced the above factors in this case, the Court finds there are not "extraordinary circumstances" which justify either abstention or issuance of a stay.

**D. Compulsory Counterclaims**

Defendants argue that pursuant to Florida Rule of Civil Procedure 1.170(a), the claims set forth in Warrington's federal action are nothing more than compulsory counterclaims to the pending State Action,[2] as they involve identical facts and parties, and are properly addressed in state court. (Id.; Doc. #30, pp. 1-

---

[2] As of May 25, 2022, the State Action remains pending in the Circuit Court of the Twentieth Judicial Circuit, Collier County, Florida. (Docs. ##32, 33.)

13

5.) Warrington responds that Defendants' argument is flawed because his claims are permissive counterclaims, not compulsory, and he is not required to plead them in the State Action. (Doc. #27, p. 8.)

The Court agrees with the determination in <u>Calderon v. U.S. Bank Nat'l Ass'n as Tr. for SG Mortgage Sec. Tr. 2006-FRE2 Asset Backed Certificates Series 2006-FRE2</u>, 619CV890ORL37LRH, 2020 WL 6270953, at *3 (M.D. Fla. Feb. 12, 2020):

> State law governs whether failure to bring a compulsory counterclaim in state court bars an action in federal court on that claim. <u>Montgomery Ward Dev. Corp. v. Juster</u>, 932 F.2d 1378, 1380 (11th Cir. 1991) (citations omitted). Florida's compulsory counterclaim rule does not bar "a party who has failed to interpose a compulsory counterclaim in a suit which is still pending [from] bring[ing] an independent action on the same claim". <u>Cheezem Dev. Corp. v. Maddox Roof Serv., Inc.</u>, 362 So. 2d 99, 99 (Fla. 2d DCA 1978). As the state court has not entered final judgment, the state court action is still pending and Florida's compulsory counterclaim rule does not bar this suit.

<u>Id.</u>

Accordingly, it is now

**ORDERED:**

1. Defendants' Motion to Dismiss, Abate, Stay, or Remand (Doc. #13) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this __25th__ day of May, 2022.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of record

15