UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRAD WARRINGTON,

    Plaintiff,

v.                                            Case No.:  2:22-cv-77-JES-KCD

RAKESH PATEL and ROCKY
PATEL PREMIUM CIGARS, INC.,

    Defendants.
_____/

## ORDER

"Willful," "intentional," "bad faith," "refusal to comply," "persistent failure," "pattern of intentional delay and obstruction," "delay tactics," "willful disregard," "refusal to cooperate"—these are just a few of the words used by Plaintiff in his motion (Doc. 87) requesting that the Court impose sanctions on Defendants for their failure to follow the Court's discovery order (Doc. 75). But upon review of the briefing (Docs. 87, 100, 104), the Court finds that the fluff doesn't fit the facts. Thus, the motion is denied.

### I. Background

This is a shareholder dispute in the discovery phase. Brad Warrington and Rocky Patel's business relationship began in 1996. Once neighbors and close friends, Warrington supported Rocky's vision to start a cigar company

and partnered with him to do so. Warrington became a minority shareholder in Rocky Patel Premium Cigars, Inc. ("Patel Cigars").

Fast forward to 2015, when Warrington sought to divest his holdings in the company. To do so, he had to comply with the terms of a buy-sell agreement, under which the company has the right of first refusal. Warrington began verbal discussions with Patel Cigars about selling his shares to the company, but they could not agree on the share's value. Warrington then asked for the company's financials, but it failed to respond. Thus, Warrington was allegedly forced to enter an agreement to sell only part of his shares at a discounted price.

Warrington claims Defendants purposefully withheld corporate records, concealed the true value of Patel Cigars, and did not comply with their obligations under the buy-sell agreement. This all resulted in Warrington's inability to properly value his shares in the company. From these general facts, the operative complaint contains a host of state-law claims. (Doc. 1.)

Last August, following oral argument, the Court ruled on a discovery dispute involving financial documents. (Doc. 75.) The Court ultimately found that Warrington was entitled to discovery of financial documents going back to 1996. Given the broad timeframe, Defendants reported that many documents were in paper format and not saved digitally.

The day after the Court's discovery order, a stay was entered pending an interlocutory appeal about whether the case should go to arbitration. Discovery halted.[1] The stay was lifted on March 23, 2023. (Doc. 79.) Shortly after, Defendants began producing the financial documents at issue in the Court's discovery order.

In April, a warehouse containing thousands of archived paper documents was made available to Warrington for inspection, copying, or scanning to digital format. Given the volume, Defendants were told it would cost around $60,000 to scan the warehouse materials. Then, at the end of April, Defendants served Warrington with an amended response to the discovery requests, stating that all responsive documents had been produced electronically (Defendants provided a password protected link to access those documents)[2] or were available for inspection as they are kept in the ordinary course at the warehouse. (Doc. 100 at 10; Doc. 100-7.) Nine days later, Warrington's counsel responded with a two-sentence email: "I am following up on this because your recent discovery response remains inadequate. Let me know if you are opposed." (Doc. 100-3.) Within minutes, counsel for Defendants asked for more specificity, offering to correct any inadequacies. (Doc. 100-4.) Defendants got

---

[1] Warrington complains that he has been waiting 15 months for responsive documents to be produced, but he doesn't account for the time that the case was stayed.

[2] The financial documents produced in electronic format went as far back as 2005. (Doc. 100-10 at 3.)

3

no response. Rather, the next day, Warrington filed this motion for sanctions having never visited the warehouse to inspect the documents.

Warrington alleges that Defendants have not produced "full, fair, and complete responses" to his first set of discovery requests despite the Court's order. (Doc. 87 at 9.) In particular, Warrington states that of the documents the Court ordered be produced, Defendants have failed to supply: Rakesh Patel's tax returns before 2014; Patel Cigars' tax returns before 2008; bank statements before 2015; financial statements before 2005; board meeting information before 2016; loan information before 2016; complete details on related party transactions, corporate assets, and loans; IP related payments; and information on entities owned partially or fully by Rakesh Patel. (Doc. 87 at 5.)

Because Defendants have conveyed they will not produce all the documents ordered, Warrington says that the only effective remedy is a default judgment. (Doc. 87 at 11.) Alternatively, Warrington requests that the Court establish certain facts from the complaint he sought to prove through discovery as allowed by Federal Rule 37(b)(2)(A)(ii). That is, Rocky Patel orchestrated the preferential distribution of Patel Cigars' assets, concealed and misrepresented corporate documents, misused company funds, engaged in self-dealing, usurped opportunities rightfully belonging to the corporation, and failed to act in the corporation's best interest. (Doc. 87 at 13.) On top of these

4

sanctions, Warrington requests, under Federal Rule 37(b)(2)(C), that he be awarded attorney fees. Notably missing from Warrington's motion, however, is any mention of the warehouse full of documents made available to him.

In response, Defendants say they have reasonably complied with the Court's order as supported by the affidavits of Patel Cigars' Chief Financial Officer and the lawyer responsible for responding to the discovery requests (Docs. 100-9, 100-10), as well as photographs of labeled banker's boxes in the warehouse (Doc. 100-8). They state that hours were spent compiling and reviewing the financial documents for production.[3] And the archived paper documents are stored and maintained in the warehouse in the ordinary course of business. Taking an extra step that the Court rarely sees in discovery disputes, Defendants' response brief lists the documents Warrington says have not been produced and explains what efforts were made to obtain those documents and where they are located. (Doc. 100 at 12-13.) This is the information that the parties should have exchanged in conferral.

On the conferral issue, Defendants assert that a good-faith effort never occurred, pointing to the cursory email exchange between the parties before Warrington filed his motion. The Court agrees that its rules and discovery

---

[3] The task was made even more time consuming because the prior CFO, Bharat Muchhala, who was intimately familiar with the company's finances for over a decade, died suddenly in 2022.

handbook, painstakingly drafted to avoid such matters coming before the Court, were not followed here. This is most evident by the fact that Defendants contacted Warrington the day before the motion for sanctions was filed, asking for elaboration on any deficiencies, and Warrington did not respond.

Warrington replies that the parties conferred multiple times. (Doc. 104 at 2.) But the Court notes that the number of conferrals isn't the focus—the quality of those conferrals is. The parties must meaningfully confer, not trade ultimatums by email. Warrington's counsel cites the emails she sent regarding the production, but those emails make no attempt to meaningfully discuss any deficiencies in the production.

The Court could reject Warrington's motion under Local Rule 3.01(g) alone. Yet doing so would leave it in a conundrum. Denying the motion would put the ball back in the parties' court to work together to solve this dispute. Can that be done? The Court has little confidence. So to ensure that discovery moves along, the Court will rule on the motion now.

## II. Legal Standard

District courts have broad discretion in controlling discovery and imposing sanctions. *See Dillon v. Champions' BBQ, Inc.*, No.

807CV544T23MAP, 2008 WL 186528, at *1 (M.D. Fla. Jan. 18, 2008).[4] Rule 37 provides the framework for discovery sanctions:

> (2) *Sanctions Sought in the District Where the Action Is Pending.*
>
> > (A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
> >
> > > (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> > >
> > > (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> > >
> > > (iii) striking pleadings in whole or in part;
> > >
> > > (iv) staying further proceedings until the order is obeyed;
> > >
> > > (v) dismissing the action or proceeding in whole or in part;
> > >
> > > (vi) rendering a default judgment against the disobedient party; or
> > >
> > > (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

---

[4] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

The above sanctions are available to prevent unfair prejudice to the litigants and ensure the integrity of the discovery process. See *CS Bus. Sys., Inc. v. Schar*, No. 5:17-CV-86-OC-PGBPRL, 2017 WL 9939116, at *1 (M.D. Fla. Sept. 5, 2017). But a severe sanction like that of a default judgment, as sought here, is appropriate only as a last resort. *See Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993) (citing *Navarro v. Cohan*, 856 F.2d 141, 142 (11th Cir. 1988)). "Violation of a discovery order caused by simple negligence, misunderstanding, or inability to comply will not justify a Rule 37 default judgment." *Malautea*, 987 F.2d at 1542. Imposing a severe penalty requires a willful or bad-faith failure to obey a discovery order. *See BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1050 (11th Cir. 1994).

Likewise, sanctions are generally not warranted where a party has shown that it made all reasonable efforts to comply with the court's order. *Yellow Pages Photos, Inc. v. YP, LLC*, No. 8:17-CV-764-T-36JSS, 2019 WL 3817385, at *2 (M.D. Fla. Aug. 14, 2019) (citing *BankAtlantic v. Blythe Eastman Paine Webber, Inc.*, 12 F.3d 1045, 1050 (11th Cir. 1994)).

### III. Discussion

The discovery rule governing the production of documents states that a party must produce documents or electronically stored information as follows:

    (i)    A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

    (ii)    If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

    (iii)    A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E). The burden of proving that the documents were produced in the usual course of business falls on the producing party. *See Mizner Grand Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, 270 F.R.D. 698, 700 (S.D. Fla. 2010).

Patel Cigars says it has consistently kept certain financial and other documents in paper format, labeled in banker's boxes, on its premises over the years, particularly older documents. For example, one of Warrington's requests is for tax returns going back to 1995. There is a banker's box in the warehouse labeled "Tax returns 97–2013." Defendants assert that they have produced all electronic records they have been able to find after a diligent search, and additional paper documents stored in the warehouse have been made available for inspection and copying. Outside of these documents, Defendants are unaware of any other responsive materials.

Based on the information presented, the Court cannot say that Defendants willfully failed to comply with the Court's discovery order in bad

9

faith. The Court fails to see how Defendants' conduct meets the egregious description that Warrington offers. He would have the Court believe that Defendants have done absolutely nothing to respond to his discovery requests. Not so. Defendants have made its records available, which as mentioned, appear organized and labeled.

Warrington complains about how the "dusty, damaged, or stained" boxes are kept. But as far as the Court can tell, he has not tried to work with opposing counsel to obtain more information about what is in those boxes, let alone avail himself of the opportunity to review the warehouse of documents. One suggestion is to simply ask opposing counsel to explain what is in some boxes that Warrington has concerns about. Otherwise, from the photos, many boxes contain labels that indicate they have documents responsive to Warrington's requests.

The Court finds no flagrant disregard or willful disobedience of its discovery order such that sanctions are due. To the contrary, Defendants have met their burden to show they produced the documents as they are kept in the ordinary course of business. There may be other relief available concerning the format of production, such as an order to provide an index or summary, but no such request is before the Court. Finally, many cases that Warrington cites about the format of production were before the court on a different posture,

such as a motion to compel, which presents a far different standard than what the Court must apply now in assessing sanctions.

One last point. Both parties are reminded of their continuing obligation to meet and confer in a good-faith effort to resolve issues to be raised in a motion before coming to court. Counsel are also strongly urged to abide by the mandate of Rule 1 requiring that all civil procedure rules, including rules governing discovery, be construed and administered "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Accordingly, it is now **ORDERED**:

Plaintiff's Motion for Sanctions (Doc. 87) is **DENIED**.

**ORDERED** in Fort Myers, Florida this June 9, 2023.

Kyle C. Dudek
United States Magistrate Judge

Copies:  All Parties of Record