# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

BRAD WARRINGTON,

     Plaintiff,

v.

ROCKY PATEL PREMIUM
CIGARS, INC., and RAKESH
PATEL,

     Defendants.

Case No.: 2:22-cv-77-JES-KCD

## ROCKY PATEL PREMIUM CIGARS, INC.'S
## MOTION FOR RULE 37 SANCTIONS

Defendant Rocky Patel Premium Cigars, Inc. ("the Company") respectfully requests that the Court order sanctions against the Plaintiff and/or his counsel pursuant to Rule 37(a)(5) and (b)(2)(A).

Plaintiff alleges that the Company improperly interfered with his attempt to sell his 6.05% interest in the Company to a third party, Whitefish Bay SPV, and in so doing committed a business tort and breached the parties' Buy-Sell agreement and its covenant of good faith and fair dealing.

The Company long has maintained Whitefish Bay's purported $7.59 million offer was not a *bona fide*, arms-length offer to purchase the Plaintiff's shares.

1

Despite receiving multiple discovery requests relating to the offer, which culminated in a Court Order to provide substantive responses, the Plaintiff has failed to:

1. Produce *a single* document responsive to the Company's requests—including documents required under the Parties' Buy-Sell Agreement—with the exception of a three-page Stock Purchase Agreement sent to the Company prior to the instant litigation; and

2. Answer interrogatories that ask for basic information regarding Whitefish Bay, its members, and its relationship with the Plaintiff, despite a Court Order requiring the Plaintiff to provide this information.

The unreasonableness of the Plaintiff's position is further reinforced by evidence establishing that members of Whitefish Bay are longtime business associates of his attorney, Frank Caruso. This evidence is directly contrary to the impression with which Plaintiff's counsel left the Court at the last discovery hearing in this matter. The clear implication of what Plaintiff's counsel was representing is that the Whitefish Bay crowd had nothing to do with anyone associated with his client, until its offer came in over the transom. What was said at the last hearing is of one piece with prior incomplete disclosures and misleading statements to this Court, including fighting tooth and nail to protect the Plaintiff's extortionary PowerPoint Presentation from disclosure, only to claim when ordered to disclose it

2

that it was somehow not in the possession of the Plaintiff. *See* ECF No. 229. This Court should ask why it continues to hear only a sliver of the story from Plaintiff's counsel and whether it can continue to tolerate his misleading statements.

For these reasons, the Company respectfully requests that the Court strike from the Complaint the allegations relating to Whitefish Bay SPV based on the Plaintiff's failure to obey the Court's January 19, 2024, Order on the Company's motion to compel. The Company further respectfully requests that the Court order the Plaintiff and/or his counsel to pay the Company's reasonable attorneys' fees and costs incurred in briefing and arguing its motion to compel discovery responses and this instant motion, which is necessitated by the Plaintiff's subsequent failure to comply with the Court's express Order.[1]

## I.    Background

### A.    The Company's Negotiations for the Purchase of the Plaintiff's Shares

In 1998, all Company shareholders entered into a Buy-Sell Agreement, which established a procedure for the sale of shares in the Company. *See* Ex. A; *see also* Ex. 1 to Compl. (ECF No. 1). To initiate a sale, a shareholder must first notify the

---

[1] To the extent that the Court is inclined to grant the monetary relief requested in the instant motion, the Company will submit declarations in support of its request for attorneys' fees and costs.

Company of his intent to sell and the proposed buyer and terms. *Id.* at 2. The Company then has the option to purchase the shares for the lesser of: (1) the amount reflected in the notice; or (2) the value of the shares as determined by the appraisal process set forth in Article 4.02. *Id.* at 2–5. Article 4.02 provides that:

> The Stockholder selling the shares and the Stockholder or Corporation purchasing the shares shall each choose an appraiser having the qualifications set forth below, and shall provide notice to the other party of the identity of such appraiser. Such appraisers shall each separately determine the value of the shares. All appraisers shall be accounting or investment banking or business valuation firms having at least five years experience appraising corporations and such appraisers shall act in good faith and independently of each other and of the parties hereto.

*Id.* at 4. The Buy-Sell Agreement provides a mechanism for comparing the value of the shares as determined by the appraisers and indicates that "[i]f either party fails to appoint an appraiser within ten days, the appraiser timely appointed by the other party shall determine the value of the shares." *Id.* at 4–5.

In 2015, the parties began discussions regarding the Plaintiff's sale of his shares to the Company. Compl. ¶ 20 (ECF No. 1). In preparation for a potential purchase or sales process, the Company sent Plaintiff's counsel a valuation of the Plaintiff's shares prepared by an independent expert pursuant to the procedure established in the Buy-Sell Agreement. Declaration of Alex R. Figares ("Figares Decl.") ¶ 7. The valuation concluded that the Plaintiff's 6.05% interest had an estimated value of $1,936,000. *Id.* ¶ 8. Plaintiff alleges under oath in his Complaint

4

that he obtained an independent valuation of his shares at $13 million. Compl. ¶ 22. If the Plaintiff obtained such a valuation, he never shared it in the process surrounding the Buy-Sell Agreement, as that Agreement contemplates. *See* Figares Decl. ¶ 9. Nor has the Plaintiff produced it in discovery.

On June 18, 2021, Plaintiff's counsel sent a letter to the Company notifying it of the Plaintiff's intent to sell his 7,010 shares to "Special Purpose Vehicle ('SPV') Whitefish Bay" for $7,590,000. *See* Ex. B. Instead of providing any independent accountant or finance expert valuation of his own, as the Buy-Sell Agreement requires as the next step, Plaintiff's counsel demanded that the Company "open a virtual data room" for the Whitefish Bay purchaser to conduct "due diligence." Ex. C. The Company explained that the Plaintiff had failed to provide an appraisal of his shares pursuant to Section 4.02 of the parties' Buy-Sell Agreement and explained that the proposed transaction was not a *bona fide* offer for the purchase of his shares. *See* Ex. D. Plaintiff's counsel responded that the Plaintiff had complied with the terms of the Buy-Sell Agreement and restated his request that the Company set up a data room. *See* Ex. E. On September 27, 2021, the Company sent Plaintiff's counsel another letter requesting information about Whitefish Bay SPV. *See* Ex. F.

On October 15, 2021, Plaintiff's counsel sent the Company a copy of an executed agreement to purchase 500 of the Plaintiff's shares in the Company,

5

purportedly signed by the members of Whitefish Bay SPV, identified as Bill Majcher, Jason Sharkey, and Xiuting Zhu. *See* Ex. G ("Stock Purchase Agreement"). The Stock Purchase Agreement indicated that Whitefish Bay SPV had "desired to purchase 7,010 of [the Plaintiff's] shares subject to due diligence which was not provided by Company as requested by [the Plaintiff] . . . as a result Purchaser desired to purchase a small amount of [the Plaintiff's] shares." *Id.* On November 1, 2021, Plaintiff's counsel sent the Company a letter indicating that his firm received a deposit of $108,274 from Whitefish Bay on October 29, 2021. *See* Ex. H. The letter further indicated that "we have received the signed Promissory Note from Whitefish Bay SPV." *Id.* Plaintiff did not provide proof of receipt of the deposit or the signed Promissory Note.

The Plaintiff filed his Complaint on February 4, 2022. In particular, the Plaintiff alleges that the Defendants' failure to "provide support for the sale" by not obliging Plaintiff's demand for a virtual data room for Whitefish Bay to conduct due diligence and not issuing a share certificate reflecting the revised transaction and sale of 500 of Warrington's shares: (1) breached the Buy-Sell Agreement (Count I – Breach of Contract); (2) breached the covenant of good faith and fair dealing inherent in the Buy-Sell Agreement (Count II – Breach of the Covenant of Good Faith and Fair Dealing); and (3) interfered with the Plaintiff's business relationship

6

with Whitefish Bay (Count III – Tortious Interference with Contract or Business Relationship).  The Complaint attached the Buy-Sell Agreement as an exhibit.  But neither in the Complaint nor in any subsequent brief does the Plaintiff explain what provision of that Agreement required the Company to set up a "virtual data room" for a purchaser or authorized Warrington to skip the process of obtaining a third-party valuation expert and instead to insist that some third-party offer just be accepted and executed.

### B.    The Company's Discovery Requests Relating to Whitefish Bay

In September 2023, the Company served the Plaintiff with its First Set of Requests for Production of Documents and Interrogatories.  *See* Exs. I, J.  Both sets of discovery requests included requests for information relating to Whitefish Bay, including information about its corporate structure, ownership or membership, its relationship with the Plaintiff and his attorneys or agents, and the transaction whereby it supposedly attempted to buy the Plaintiff's shares in the Company for $7.59 million.

On November 14, 2023, the Plaintiff served his response to the Company's First Set of Requests for Production of Documents.  *See* Ex. K.  Plaintiff objected to approximately half of the document requests relating to Whitefish Bay on the grounds of relevance.  Plaintiff contended that the Buy-Sell Agreement required only notice that there was a buyer and its name and that any other information about the

buyer was therefore irrelevant to his claims. *Id.* Plaintiff's response to the Company's Interrogatories asserted largely the same objections. *See* Ex. L. During meet and confer efforts, Plaintiff's counsel maintained their relevance objections and argued that the Company's position that Whitefish Bay was not a *bona fide* purchaser was absurd but that the Company could "stick to it." *See* Declaration of Nicholas S. Drews ¶ 4. On the document requests and interrogatories regarding Whitefish Bay to which the Plaintiff did respond, his responses were woefully deficient and suspiciously sparse, with no substantive information about Whitefish Bay, its relationship with the Plaintiff and his associates, or the context of any negotiations to purchase his shares. The Plaintiff failed to produce any responsive documents other than the Stock Purchase Agreement previously sent to the Company on October 15, 2021. *See* Ex. G.

On December 22, 2023, the Company filed a motion to compel the Plaintiff to provide full and complete responses to the Company's discovery requests. *See* ECF No. 194. During a hearing on the motion on January 16, 2024, the Court granted the Company's motion to compel on nearly all of the Whitefish Bay requests. *See* Ex. M ("January 16, 2024 Hr'g Tr."). With respect to the Company's request for attorneys' fees and costs incurred in filing the motion, counsel for the Company noted that the claims regarding Whitefish Bay make up a significant

portion of the Complaint and that the Plaintiff's refusal to provide discovery relating to the alleged transaction was not substantially justified. *See id.* at 26–27. The Court denied the Company's request for attorneys' fees without prejudice but indicated that it would reconsider the objections if the Company could demonstrate "some link between Warrington and Whitefish," *id.* at 31, that would establish the Plaintiff's objections to providing the information were not substantially justified.

The Court asked counsel for the Plaintiff multiple times whether there was any connection between the Plaintiff and the members of Whitefish Bay, and Plaintiff's counsel repeatedly indicated that no such connection existed. *See id.* at 23, 33. On January 19, 2024, the Court entered an Order memorializing its rulings from the January 16 hearing and ordering the Plaintiff to serve amended responses within 14 days. *See* ECF No. 215.

On February 2, 2024, the Plaintiff served his Second Amended Response to the Company's First Set of Interrogatories and Request for Production of Documents. *See* Ex. N. In response to the document requests, the Plaintiff indicated that he has no responsive documents, and he did not provide a supplemental production. *Id.* In response to the interrogatories, the Plaintiff provided only partial and incomplete responses and explicitly refused to comply with the Court's Order as to Interrogatory No. 4 that he disclose "how the [Whitefish Bay] opportunity arose

or was presented to [Plaintiff], the Person who introduced [Plaintiff] to Whitefish Bay SPV, which member(s) of Whitefish Bay SPV participated in the negotiations, [and] any presentations, proposals, term sheets, offers or counteroffers exchanged between Whitefish Bay SPV and [Plaintiff]." *Id.*; *see also* ECF No. 215 at 2.

To date, the Plaintiff has not produced *a single* document relating to Whitefish Bay SPV or the alleged transaction, with the sole exception of the three-page Stock Purchase Agreement originally sent to the Company on October 15, 2021. *See* Ex. G. Plaintiff has furthermore refused to provide *any* information about Whitefish Bay and its members, despite being ordered to do so by the Court, including how the offer was presented to him, how he was introduced to the members of Whitefish Bay, and who participated in the negotiations for the purchase of his shares.

## C.   Plaintiff's Connections with the Members of Whitefish Bay

During the hearing on the Company's motion to compel, Plaintiff's counsel repeatedly represented to the Court that anyone associated with his client had *absolutely no* connection with the members of Whitefish Bay prior to the offer being made. *See* Ex. M at 23 ("THE COURT: Okay. Well, let me – does Warrington have any connection to . . . this Whitefish entity that you know of? MR. CARUSO: No, he does not."), 33 ("THE COURT: Mr. Caruso, I definitely don't want to see you back at a later time when they've got some document or some, you know, clandestine meeting between your client and Whitefish where they agreed to make this deal.

10

That ain't gonna happen, right?   MR. CARUSO: It's not going to happen, Your Honor."). Plaintiff's counsel of course failed to mention that **he, Frank Caruso, is the connection between the Plaintiff and at least two of the three members of Whitefish Bay**, specifically Jason Sharkey and Bill Majcher.[2] A review of publicly available sources has revealed extensive connections between Plaintiff's counsel and the members of Whitefish Bay, each of which precedes the alleged offer by several years.

        i.     *Jason Sharkey*

Jason Sharkey is identified in the Stock Purchase Agreement as a member of Whitefish Bay SPV.[3] *See* Ex. G. In his supplemental response to Interrogatory No. 3, the Plaintiff stated that "[b]ased upon representations made to me, Whitefish Bay SPV was a special purpose vehicle set up by Jason Sharkey with his partners to purchase my shares in Rocky Patel Premium Cigars." *See* Ex. N at 3. Plaintiff did

---

[2] Despite thorough investigation, the Company has been unable to identify or locate Xiuting Zhu, the other purported member of Whitefish Bay.

[3] In connection with his opposition to the Company's motion to compel, the Plaintiff submitted a declaration stating that Whitefish Bay "had both the ability and intention to purchase [his] shares in Patel Cigars." This representation is undermined by several state tax liens entered against Mr. Sharkey for nearly $80,000, the most recent of which was satisfied on July 8, 2022, more than a year **after** the Plaintiff first approached the Company about the Whitefish Bay offer. *See* Ex. O.

not elaborate on the source of these representations, nor did he identify how the opportunity was presented to him or who made the introduction, as he was required to do by the Court's January 19 Order.

Public records show that Plaintiff's counsel and Mr. Sharkey are business associates that have operated multiple business entities together in various states since at least 2020. On July 20, 2020, nearly a year before the Plaintiff first approached the Company with the Whitefish Bay offer, Plaintiff's counsel and Mr. Sharkey filed articles of organization with the Wyoming Secretary of State to establish Hale Ventures, LLC. *See* Ex. P. Both Plaintiff's counsel and Mr. Sharkey are listed as organizers for Hale Ventures, and Mr. Sharkey listed the same mailing address as Plaintiff's counsel's U.S. firm, C&A Advisory LLC. *See id.* Hale Ventures was still in operation as of April 6, 2023, the date the entity filed its last annual report. *See* Ex. Q.

On February 1, 2021, Plaintiff's counsel and Mr. Sharkey filed a certification of formation with the Office of the Secretary of the State of Texas to establish Advanced Tech Crete, LLC. *See* Ex. R. The certificate of formation listed Plaintiff's counsel and Mr. Sharkey as managing members, and Mr. Sharkey again listed the same mailing address as C&A Advisory. *See id.* Mr. Sharkey's LinkedIn profile lists his current job as Managing Partner for Advanced Tech Crete since February

2021.  *See* Ex. S.  A November 14, 2023 press release from Advanced Tech Crete indicates that Plaintiff's counsel is a co-founder for the entity.  *See* Ex. T.  Advanced Tech Crete is still active and issued a press release as recently as January 25, 2024. *See* Ex. U.

> ii.      *Bill Majcher*

William "Bill" Majcher is identified in the Stock Purchase Agreement as a member of Whitefish Bay SPV.  *See* Ex. G.  Mr. Majcher received international attention in July 2023 after he was arrested in Vancouver, Canada and charged by the Canadian government with foreign interference for spying on behalf of the Chinese government.  *See* Norimitsu Onishi, *A Retired R.C.M.P. Officer Is Charged with Spying for China*, N.Y. Times (July 21, 2023), https://www.nytimes.com/2023/07/21/world/canada/majcher-canada-spy-china.html.  Majcher was also the subject of a 2019 investigation by the Australian Broadcasting Corporation into "Project Dragon," an initiative launched by the Chinese government to "recover" assets and money allegedly stolen from the state and transferred overseas.  *See* Ex. V.

The Project Dragon investigation revealed that Plaintiff's counsel's Hong Kong firm, Caruso and Associates, Ltd., was "appointed by the government of the People's Republic of China to undertake investigations and asset recovery

operations, targeting Chinese individuals or entities complicit in the alleged misappropriation of funds from China and the diversion of those funds to other countries." *Id.* at 3. According to the news report, Caruso and Associates enlisted two individuals, Jason McFetridge and Austin Whittaker, to execute this project. *Id.* The report indicated that Bill Majcher was later "brought in to breathe new life into Project Dragon," with McFetridge referring to him as "the heavy hitter" and Whittaker describing him as "the Chinese end [of the project]." *Id.* at 6.

Plaintiff's counsel can be further connected to Mr. Majcher through various entities Plaintiff's counsel has founded or owned with Peter Crawford, another known associate of Mr. Majcher and Mr. Whittaker. Plaintiff's counsel and Mr. Crawford founded Jackaroo Oceania Asia, Limited on April 20, 2009 in Hong Kong, and they were 25% shareholders in an Australian company called The Turboforte Pty Ltd. *See* Exs. W, X. Mr. Crawford and Mr. Whittaker are founding directors of EMIDR (Australasia) Pty Ltd, an entity in which Mr. Majcher was also a director before it was dissolved on August 14, 2022. *See* Ex. Y.

## II.    Memorandum of Law

"Sanctions allowed under Rule 37 are intended to 1) compensate the court and other parties for the added expense caused by discovery abuses, 2) compel discovery, 3) deter others from engaging in similar conduct, and 4) penalize the offending party

or attorney." *Wouters v. Martin Cnty.*, 9 F.3d 924, 933 (11th Cir. 1993).  Rule 37(a)(5)(A) requires that attorneys' fees be awarded to the prevailing party on a motion to compel unless certain limited exceptions apply.  *Powers v. Lockheed Martin Corp.*, 2023 WL 23085, at *1 (M.D. Fla. Jan. 3, 2023).  One such exception is where "the opposing party's nondisclosure, response, or objection was substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(ii).  "[A]n individual's discovery conduct should be found 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Devaney v. Continental Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  "[T]he non-prevailing party bears the burden of demonstrating substantial justification." *Great Lakes Transp. Holding LLC v. Yellow Cab Serv. Corp. of Fla., Inc.*, 2011 WL 1705569, at *1 (S.D. Fla. May 4, 2011).

If a party fails to comply with a discovery order, the court may "issue further just orders" as additional sanctions, including adverse inferences, evidentiary prohibitions, and striking pleadings or dismissing the action in whole or in part.  Fed. R. Civ. P. 37(b)(2)(A).  An award of attorneys' fees and costs under Rule 37(b)(2) is similarly mandatory unless the court finds that the party's failure to comply with the order "was substantially justified or other circumstances make an award of

15

expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).  This includes costs incurred to file a motion for sanctions based on an opposing party's violation of a discovery order. *Devaney*, 989 F.2d at 1163 n.12 ("The cost of a motion for sanctions which is filed in order to compel obedience with a court order falls within the ambit of 'expenses . . . caused by [a] failure to comply.'" (alteration in original)).

### A.    Plaintiff's Objections to the Company's Requests for Discovery Regarding Whitefish Bay SPV Were Not Substantially Justified.

Plaintiff cannot meet his burden to establish that his relevance objections to the Whitefish Bay discovery requests were substantially justified.

First, as discussed above, Plaintiff's counsel has extensive business connections with the members of Whitefish Bay SPV that predate the Plaintiff's June 18, 2021, notice of sale by several years.  Plaintiff's counsel's objections, despite knowledge of these connections,[4] and his repeated insistence during the hearing on the motion to compel that anyone associated with his client had no connection with

---

[4] To the extent that the Plaintiff would argue that he was unaware of these relationships, the Plaintiff has consistently avoided or refused to answer questions regarding how he was introduced to the members of Whitefish Bay or how the opportunity was presented to him, despite being ordered by this Court to do so.  The Company (and the Court) can reasonably infer from the circumstances that Plaintiff's counsel made the introductions.

16

the members of Whitefish Bay,[5] cannot reasonably be considered substantially justified.  These connections provide support for the Company's long-standing contention that the Whitefish Bay offer was manufactured by the Plaintiff and his agents during negotiations for the Company's purchase of the Plaintiff's shares in an effort to artificially inflate the value of those shares.

These connections are particularly suspect in light of the procedures of the Buy-Sell Agreement.  When the Plaintiff suggested some desire to sell his shares, the Company provided a valuation of the Plaintiff's shares pursuant to the Agreement's procedures.  *See* Figares Decl. ¶ 7.  Rather than provide a competing valuation, Plaintiff's counsel enlisted his business associates to craft a fake "offer" for nearly four times the value of the Company's valuation.  That the offer was apparently arranged by Plaintiff's counsel is facially relevant to whether it was a *bona fide* arms'-length transaction or, as the Company has consistently maintained, a pretense to force the Company to pay more for the Plaintiff's shares, or generate a basis for the claims at issue in this lawsuit embodied by Counts I–III.

-----

[5] The Company's Requests for Production and Interrogatories are clearly defined to apply to "Plaintiff Brad Warrington and *all attorneys, agents, representatives, or other persons under the control of or purporting to act for or on behalf of Plaintiff Brad Warrington*."  Ex. I at 2; Ex. J at 2 (emphasis added).

It is also not an option under the Buy-Sell Agreement for the Plaintiff to have lobbed an alleged third-party offer at the Company and refuse to participate in the valuation opinion process, as the Company's option to purchase his shares is at the lesser of the third-party offer or the outcome of the competing valuation opinion process. *See* Ex. A at 2. The Plaintiff alleged in the Complaint that he had a valuation of his own from an external expert, apparently mindful of how the Buy-Sell Agreement required a shareholder to submit one. But, if the Plaintiff had one, he never provided it during the Buy-Sell Agreement process. *See* Figares Decl. ¶ 9. And the Plaintiff has not produced one in discovery since. Importantly, the Plaintiff chose to submit a "verified complaint," swearing under oath to the accuracy of the apparently incorrect assertion that he had obtained, in connection with the Buy-Sell Agreement process, a valuation of the company.

The manifold connections between Plaintiff's counsel and the Whitefish Bay partners are in inexcusable tension with Plaintiff counsel's representations to this Court. This Court questioned Plaintiff's counsel about connections between the Plaintiff and the Whitefish Bay group, and Plaintiff's counsel claimed over and over again there were none. This Court even forecasted the trouble that would follow if the Court learned of such connections in the future. *See* Ex. M at 33. Is Plaintiff's counsel really going to say he was talking only about his client? Can even that

assertion really be believed given the long association between Plaintiff's counsel and his client, including a long stint together in China and Hong Kong? In any event, is that parsing of the Court's questions even remotely appropriate? This Court was asking about pre-existing connections between the Plaintiff's side and the purchasers, and Plaintiff's counsel was implying that this was an arms-length offer that came in over the transom. Plaintiff counsel's denials, without further disclosure, were misleading at best. They certainly wasted the time of this Court and of the Company in bringing the truth to light, a truth that should have been indicated by candid responses to the Company's discovery requests in the first instance.

Plaintiff's facially inadequate supplemental responses are likewise not substantially justified and an appropriate basis for sanctions. Rule 37 requires that the court treat "an evasive or incomplete disclosure, answer, or response" as "a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Interrogatory No. 3 requires that the Plaintiff "[d]escribe what knowledge [he has] as to business information of Whitefish Bay SPV, including identifying its officers, owners, members, place of business, type of business, and any other information that [he has] regarding the business , location, and officers, owners, and members of Whitefish Bay SPV." Ex. J at 6. In his amended response, the Plaintiff indicated only that "[b]ased upon representations made to me, Whitefish Bay SPV was a special

purpose vehicle set up by Jason Sharkey with his partners to purchase my shares in Rocky Patel Premium Cigars, Inc." Ex. N at 3. Plaintiff did not elaborate on the source of these "representations," the identities of Mr. Sharkey's "partners," or ***any of the other*** information requested by the Company regarding the entity that was allegedly going to write the Plaintiff a check for $7.59 million in exchange for his shares. Instead, the Plaintiff indicated only that he would look for documents when he returns to his home in Montana at some undisclosed future date.[6] This is certainly much less than would be expected given the apparent evidence that Plaintiff's counsel—long a close associate of the Plaintiff—set this whole alleged offer up by using his own long-time associates. At this point and against this record, a discovery response of "gee, there's this Sharkey guy and he set up a company"—is clearly evasive of the question asked in the Interrogatory and the questions asked by this Court at the last hearing.

Plaintiff also objected to responding to Interrogatory No. 4, which required the Plaintiff to explain how the Whitefish Bay offer arose, who introduced him to the members of Whitefish Bay, and which members participated in the negotiations for the alleged purchase of his shares. *See* Ex. J at 6. During the hearing on the

_____

[6] On information and belief, the Plaintiff currently resides in the Philippines.

Company's motion to compel, the Court expressly, and unambiguously, struck only the first part of this request requiring that the Plaintiff "[d]escribe the negotiations to sell [his] shares in the Company to Whitefish Bay SPV," but clearly ordered the Plaintiff "to answer the remaining specific questions that follow that statement within 14 days."  Ex. M at 25; *see also* ECF No. 215 at 2 ("Plaintiff must answer the remaining questions listed in the interrogatory.").  Plaintiff unilaterally altered the interrogatory in a way that is inconsistent with the Court's order, striking the bulk of the question:

4. ~~Describe the negotiations to sell YOUR shares in the Company to Whitefish Bay SPV, including how the opportunity arose or was presented to YOU, the Person who introduced YOU to Whitefish Bay SPV, which member(s) of Whitefish Bay SPV participated in the negotiations, any presentations, proposals, term sheets, offers or counteroffers exchanged between Whitefish Bay SPV and YOU~~, why the alleged failure to provide due diligence materials caused Whitefish Bay SPV to reduce the number of shares it was willing to buy, and the status of the sale following the execution of the Stock Purchase Agreement.

Ex. N at 3.  This deliberate evasion of the Court's Order is obviously intended to conceal the information highlighted herein regarding the connections between those associated with the Plaintiff and Whitefish Bay.  Rather than comply with the Court's Order and provide a substantive response (which the Plaintiff was required to verify under oath), the Plaintiff merely reiterated his meritless claims that the

Company "ignored the notice under the Buy Sell Agreement and did not set up a data room." *Id.* at 3–4. And, of course, Plaintiff's counsel was orchestrating these evasive responses to conceal the misleading nature of his representations to the Court.

Under Rule 37, the Plaintiff's evasive and inadequate interrogatory responses are equivalent to "a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4); *see also Dobruck v. Borders*, 2017 WL 417184, at *1 (M.D. Fla. Jan. 31, 2017). As a result, they can hardly be considered substantially justified. *See Lapinski v. St. Croix Condo. Ass'n, Inc.*, 2018 WL 6620315, at *3 (M.D. Fla. Nov. 30, 2018).

To date, the Plaintiff has not produced in discovery ***a single document*** in response to the Company's Requests relating to Whitefish Bay. Instead, the Plaintiff has consistently taken the position that the only relevant document is the Stock Purchase Agreement for a fraction of the Plaintiff's shares, which was originally sent to the Company on October 15, 2021. In addition, the Plaintiff has only now represented for the first time that ***he has no other documents*** relating to Whitefish Bay SPV or any of its members. This bad faith conduct resulted in unnecessary motions practice before this Court, as the Company moved to compel production of apparently nonexistent documents. The Court should not reward the Plaintiff's efforts to waste Company and judicial resources. *See Lozman v. City of Riviera*

22

*Beach*, 2014 WL 12360677, at *2 (S.D. Fla. Jan. 16, 2014) (ordering sanctions where the plaintiff's "baseless objections necessitated the filing of . . . motions to compel"); *Spano v. Satz*, 2010 WL 11515691, at *10 (S.D. Fla. May 12, 2010) (ordering sanctions where the plaintiff "fail[ed] to provide all responsive documents in her control and custody" and made "baseless objections to relevancy").

### B.   Plaintiff Violated the Court's January 19, 2024, Order on the Company's Motion to Compel.

Plaintiff's discovery misconduct is separately sanctionable under Rule 37(b)(2)(A) based on the Plaintiff's violation of the Court's January 19 Order. Rule 37(b)(2)(A)(iii) allows the Court to strike pleadings as a sanction for failure to obey a discovery order. Here, striking the Plaintiff's allegations in his complaint as they relate to Whitefish Bay is an appropriate sanction for his consistent bad-faith refusal to provide any information about the alleged transaction supporting his claims.[7]

The Court's January 19 Order directed the Plaintiff to respond to Interrogatory Nos. 3 and 4 and Request Nos. 13 and 15–18. As noted above, the Plaintiff's amended response to Interrogatory No. 3 was entirely deficient and "[b]ased upon

---

[7] This includes ¶¶ 20–26, 38–42 (Breach of Contract), 48–52 (Breach of the Covenant of Good Faith and Fair Dealing), and 53–60 (Tortious Interference with Contract or Business Relationship). The Court may also fashion any other "just orders" which appropriately sanction the Plaintiff.

representations made to [him]" by some undisclosed party.  *See* Ex. N at 3.
Plaintiff's response to Interrogatory No. 4 struck large portions of the interrogatory
text without explanation and again failed to identify the circumstances that led to the
Whitefish Bay offer being presented to him, the individual who introduced him to
Whitefish Bay, the members that participated in negotiations, and any documents or
counteroffers exchanged during negotiations.  *See id.*

Plaintiff's amended responses to the Company's Requests for Production are
similarly deficient because the Plaintiff failed to produce documents that he has
previously indicated are within his possession, custody, or control.  In his November
1, 2021 letter to the Company, Plaintiff's counsel indicated that his firm had received
a deposit from Whitefish Bay on October 29, 2021, along with a signed promissory
note.  *See* Ex. H.  Proof of such deposit and a copy of the signed promissory note
clearly fall within several of the Company's requests relating to Whitefish Bay,
including requests that the Court ordered the Plaintiff to respond to in its January 19
Order.  *See, e.g.*, Ex. I at 10.

"Rule 37 sanctions are imposed not only to prevent unfair prejudice to the
litigants but also to insure the integrity of the discovery process."  *U & I Corp.*, 251
F.R.D. at 675.  Plaintiff's consistent refusal to participate in discovery has not been
harmless because it has forced the Company to attempt to seek discovery from third

parties that should reasonably be within the Plaintiff's knowledge and possession. Despite extensive efforts, the Company has been unable to locate Mr. Sharkey or Xiuting Zhu, and Mr. Majcher is currently residing in Canada and prohibited from leaving the country as a condition of bail in his criminal case. Plaintiff remains the best source of the information that the Company is seeking, and his steadfast refusal to provide obviously relevant and discoverable information has damaged the Company's ability to develop its defenses. Striking the allegations from the Complaint as they relate to Whitefish Bay would cure the prejudice to the Company.

## III.   Conclusion

For the foregoing reasons, Defendants respectfully request that the Court: (1) order the Plaintiff and/or his counsel to pay the Company's reasonable attorneys' fees and costs incurred in briefing and arguing its motion to compel and the instant motions; and (2) strike from the Complaint the allegations relating to Whitefish Bay SPV based on the Plaintiff's failure to obey an order to provide discovery.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Counsel for Defendants contacted Plaintiff's counsel by email regarding the relief sought by this motion, and Plaintiff's counsel indicated that the Plaintiff opposes the motion. The Parties are continuing to meet and confer and will advise the Court if any issues presented in the instant motion are resolved.

25

Date: February 15, 2024

*/s/  Michael J. Edney*
Michael J. Mueller
Bar No. 0114938
HUNTON ANDREWS KURTH LLP
Wells Fargo Center
333 SE 2nd Avenue, Suite 2400
Miami, Florida 33131
305.810.2500
305.810.2460 Facsimile
mmueller@hunton.com

Michael J. Edney
Specially Admitted
W. Bennett Sooy
Specially Admitted
Nicholas S. Drews
Specially Admitted
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue NW
Washington, DC 20037
202.955.1500
202.778.2201 Facsimile
medney@HuntonAK.com
bsooy@HuntonAK.com
ndrews@HuntonAK.com
**Counsel for Defendant,**
**Rocky Patel Premium Cigars, Inc.**

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that, on this 15th day of February 2024, a true and correct copy of the foregoing has been provided by electronic notification through the ECF System to recipients listed below as well as to all others who receive notification through ECF on this matter.

*Francis Caruso, Esq.*
*Taylor Allyn, Esq.*
C&A ADVISORY, LLC
9595 Six Pines Drive Ste. 8210
The Woodlands, TX 77380
512-566-2637
frank@ca-advisory.com
taylor@ca-advisory.com
*Counsel for Plaintiff, Brad Warrington*

/s/ Michael J. Edney
Michael J. Edney